**FILED**

**April 13, 2016**

**TN COURT OF
WORKERS' COMPENSATION
CLAIMS**

**Time: 1:52 PM**



# IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT NASHVILLE

| | | |
|---|---|---|
| **DAVID YOUNG,** | ) | |
| Employee, | ) | **Docket No. 2015-06-0860** |
| | ) | |
| **v.** | ) | **State File No. 39751-2015** |
| | ) | |
| **YOUNG ELECTRIC,** | ) | **Judge Joshua Davis Baker** |
| Employer, | ) | |
| | ) | |
| **And** | ) | |
| | ) | |
| **FRANKENMURTH INSURANCE** | ) | |
| Carrier. | ) | |

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS

This matter came before the Court on a Request for Expedited Hearing filed by the employee, David Young, pursuant to Tennessee Code Annotated section 50-6-239 (2015). Mr. Young seeks temporary disability benefits, medical benefits and reimbursement for out-of-pocket medical expenses. Mr. Young claimed he sustained injury in an accident on May 11, 2015, in the course and scope of his employment for Young Electric (YEC). YEC denied the claim upon belief the incident never occurred. Accordingly, the central dispute at this time is whether Mr. Young is likely to succeed at a hearing on the merits in proving he suffered a workplace injury. For the reasons set forth below, the Court finds Mr. Young is likely to succeed and is entitled to an evaluation by the panel physician as well as reimbursement for out-of-pocket medical expenses he paid for treatment with Dr. Lanford.[1]

## Claim History

This claim concerns an alleged fall at a construction site. Mr. Young is a forty-year-old resident of Humphreys County, Tennessee, who worked as an apprentice wireman for YEC. Mr. Young claimed he injured his neck on May 11, 2015, when he

---

[1] A complete listing of the technical record and exhibits admitted at the Expedited Hearing is attached to this Order as an appendix.

fell while attempting to lift a shopping cart. (Ex. 2.) He claimed a coworker, William Harvey, saw the accident and helped him off the ground. Mr. Harvey provided an affidavit stating, "I . . . witnessed Mr. Young sustain an injury while working for [YEC] on May 11, 2015."[2] (Ex. 8.)

Over the nine-day period immediately following the accident, Mr. Young saw Dr. Demond C. White, his primary care physician, three times complaining of pain in his right shoulder and back. The medical notes from Mr. Young's first visit on May 12, 2015, stated the following concerning his complaints of pain: "Context: there is no injury." (Ex. 1 at 64.) Mr. Young returned to Dr. White's office on May 15 for the second visit, and again the medical notes contained no information indicating Mr. Young suffered a work-related injury. *Id*. at 68. The medical notes from the third visit, on May 20, 2015, however, state the following: "Context: there is an injury. Trauma type: lifting, occurred at work. . . States lifting a cart at work the next day shoulder started hurting, then reaggervated [sic] yesterday by pulling on wire." *Id*. at 72. The medical notes from Dr. White did not indicate Mr. Young could not return to work due to his alleged work injury.

At the request of YEC, Dr. White answered a questionnaire concerning Mr. Young's visits. In the questionnaire, Dr. White indicated Mr. Young did not disclose his condition resulted from a work injury at work during the first two visits. (Ex. 13.) Dr. White also stated he did not ask Mr. Young whether his condition resulted from an injury. *Id*.

According to the affidavit of John Boatfield, a YEC employee who worked as foreman on the jobsite where Mr. Young's accident occurred, Mr. Young first reported the injury on May 20, 2015. (Ex. 12.) YEC filed a first report of injury that same day. (Ex. 4.) Mr. Boatfield also completed an accident report. (Ex. 11.)

After Mr. Young reported the accident, he continued to seek treatment on his own and met with Dr. Brook A. Adams. (Ex. 1 at 47-62.) Dr. Adams provided Mr. Young additional pain medication and took him off work for one week beginning May 27, 2015. *Id*.at 48. She also ordered an MRI and EMG. *Id*. The MRI revealed spondylosis, stenosis and a disc protrusion at the C6-7 level of the cervical spine; the EMG revealed radiculopathies at the C7-8 level. *Id*. at 59, 62.

After learning the results of the MRI and EMG, Mr. Young sought treatment from a neurologist and met with Dr. Gregory Lanford of the Howell-Allen Clinic on June 9, 2015. *Id*. at 15-16. Dr. Lanford recommended surgery to alleviate Mr. Young's neck-

---

[2] YEC moved to exclude Mr. Harvey's affidavit. As explained in the order, the Court denies YEC's motion.

and-arm pain, and opined Mr. Young's work accident injured his cervical spine. (Ex. 1 at 6-7, 14, 16; Ex. 9 at ¶5; Ex. 10.)

Several weeks after Mr. Young reported the accident to Mr. Boatfield and Dr. Lanford recommended surgery, YEC provided Mr. Young a panel of physicians so he could select a doctor to treat his injury. (Ex. 5.) On June 27, 2015, Mr. Young selected Dr. N.K. Singh. *Id.* After Mr. Young selected Dr. Singh, YEC refused to make an appointment and denied liability for the claim.

When YEC denied the claim, Mr. Young filed a Petition for Benefit Determination. (T.R. 1.) The parties did not resolve their issues through mediation and the mediator issued a Dispute Certification Notice. (T.R. 2.) Mr. Young filed a Request for Expedited Hearing seeking temporary disability and medical benefits. (T.R. 3.) This Court convened an evidentiary hearing of Mr. Young's Request on March 3, 2016.

At the hearing, Mr. Young testified the accident occurred at a Kroger store YEC was assisting to remodel. At some point near the end of his shift, Mr. Young attempted to move a shopping cart loaded with forty-to-sixty pounds of construction materials from in front of the "connex"—a trailer in the Kroger parking lot YEC used to store construction materials. When Mr. Young attempted to move the cart, he found the cart's wheels were stuck and the cart would not roll. Because he could not roll the cart, Mr. Young attempted to pick it up. As he lifted the cart, Mr. Young believed the materials in the cart may have shifted. He testified:

> I kind of tripped; I lost my balance. The ground out there, from where they run bobcats and different kinds of heavy equipment, that ground was real unlevel . . . It wasn't a flat, sound surface . . . Not sure what I stepped in or what happened, but that ground there was uneven and I fell backwards with that cart.

When he fell, he said the cart came down "on the top" of his head, but later clarified it hit his forehead.

Mr. Young stated he did not experience pain immediately after the fall; he completed his shift, went home, and went to bed. The following morning, May 12, 2015, around two or three a.m., he woke up in "excruciating pain." Mr. Young had scheduled the morning off to attend a court proceeding. He testified he planned to go to work after court, but his pain was so intense he could not attend court and went to the see Dr. White instead. Mr. Young stated he called Mr. Boatfield that same morning while on his way to Dr. White's office and told him "exactly what happened; that I had been injured at work that day."

3

Mr. Young did not work for about nine months after his last day YEC, May 19, 2015. Mr. Young testified he began working for Miller Electric on February 2, 2016. He stated he worked seventy-four hours per week and earned $14.00 per hour. He testified he earned no income from May 19, 2015, through February 2, 2016.

YEC cross-examined Mr. Young considerably concerning the lack of a description of a workplace injury in the medical notes from visits with Dr. White immediately following May 11, 2015. Mr. Young could not explain why the treatment notes specifically stated "there is no injury," but maintained he told all medical providers about the workplace accident.

YEC also asked Mr. Young whether he had problems with his neck in the past. Consistent with his deposition testimony, Mr. Young stated he had not. When YEC asked Mr. Young if he remembered a trip to the emergency room on February 22, 2014, where providers placed him in a neck collar, took a CT of his cervical spine and diagnosed him with cervical spondylolisthesis, he replied, "I had forgotten about that actually." He denied having any further problems with his neck after leaving the emergency room, and said he took the neck collar off immediately after leaving.

YEC looked to impeach Mr. Young's credibility by asking him questions about alleged inconsistent statements he made concerning the number of times he had been arrested; essentially claiming he failed to disclose more than one arrest. At his deposition, Mr. Young stated he had been arrested for felony initiation of methamphetamine. (Ex. 7 at 18-19.) When asked whether he had been arrested any other time, he stated, "No, sir. That's it." *Id*. at 19. However, he followed this statement up by admitting he had also been arrested for misdemeanor possession of drug paraphernalia. *Id*.

Mr. Boatfield, the site foreman, testified on behalf of YEC. Mr. Boatfield was at the jobsite on the May 11, 2015, with seven other YEC employees. Although present at the worksite, he did not witness the accident. He did, however, testify the area around the connex was not "torn up" as Mr. Young claimed.

Counsel for YEC asked Mr. Boatfield about the relationship between Mr. Young and Mr. Harvey, the only other witness to the accident. Mr. Boatfield said Mr. Harvey and Mr. Young were good friends. He further testified YEC terminated Mr. Harvey's employment.

When asked whether he received notice or heard from Mr. Young about a work accident on May 11, 2015, Mr. Boatfield stated, "I really don't recall anything, the only time I recall anything was on the twentieth, but he said he done [sic] [it] the week before then." When asked whether Mr. Young called him on May 12, 2015, to report the accident, Mr. Boatfield stated, "I really don't think so, I mean I didn't note [sic] nothin'

4

down." He further testified he kept a daily log and would have included an injury report such as Mr. Young's in the log. Mr. Boatfield, however, stated he had never had a worker suffer a workplace injury at YEC.

According to Mr. Boatfield, Mr. Young first told him about the accident on the morning of May 20, 2015, when he called and stated he had hurt his back, shoulder or right side "the week before that." Mr. Boatfield said Mr. Young never told him he fell at work but instead stated, "he hurt hisself [sic] loading-up material in the connex." According to Mr. Boatfield's affidavit and the accident investigation notes, Mr. Young requested workers' compensation benefits because he planned to be off for the next few days. (Exs. 11, 12.) Mr. Boatfield further testified Mr. Young did not return to work for YEC after May 20, but did return to the jobsite to ask if he could come back to work.

On cross-examination, Mr. Young's counsel asked Mr. Boatfield whether YEC could have accommodated Mr. Young's restrictions. Mr. Boatfield stated, "I don't know what I could have done; I mean its construction." It was not clear from his testimony, however, that Mr. Boatfield knew of any workplace restrictions imposed on Mr. Young. Counsel also asked Mr. Boatfield if he might have forgotten that Mr. Young called on the morning of May 12, 2015, and reported a workplace accident. Mr. Boatfield answered, "I think if he had told me that, or mentioned, that he hurt hisself [sic] lifting a shopping cart, I would have remembered it."

During closing argument, Mr. Young argued he satisfied his burden of proving his entitlement to workers' compensation benefits. He requested an award of medical benefits, as well as temporary disability benefits from the date of the accident until he returned to work for another employer on February 2, 2016.

YEC's counsel argued Mr. Young should be denied benefits because the accident never occurred. Counsel claimed Mr. Young is not a credible witness. YEC points to the difference between the medical histories contained in the medical records, Mr. Young's failure to disclose a prior arrest and his failure to disclose a hospital visit where providers placed him in a neck collar. It also argued Mr. Harvey is biased because of his friendship with Mr. Young. For that reason, and because his termination by YEC also indicates bias against YEC, his affidavit is not credible.

## Motions in Limine

Before addressing the merits of Mr. Young's claim, the Court must first address motions in limine filed by Mr. Young and YEC. In his motion in limine, Mr. Young moved to exclude Mr. Boatfield's handwritten notes and the questionnaire completed by Dr. White. Mr. Young argues both documents are hearsay. YEC moved to exclude Mr. Harvey's affidavit because Mr. Young did not file the affidavit contemporaneously with

his Request for Expedited Hearing. For the reasons provided below, the Court denies both motions in limine.

## I. Mr. Young's Motion to Exclude Mr. Boatfield's Notes and Dr. White's Questionnaire

In his motion in limine, Mr. Young first argued the Court should exclude Mr. Boatfield's handwritten notes, marked as Exhibit 11, because the notes are not authenticated or signed. Mr. Young claimed rules 801 and 901 of the Tennessee Rules of Evidence prevent introduction of the notes because they are hearsay.

YEC agreed the notes contain hearsay statements. Despite the hearsay, YEC argued that the notes, which contain a summary of events concerning Mr. Young's workplace accident, contain a recording of regularly-conducted activity and, therefore, constitute a business record. For that reason, YEC argues the notes are admissible.

The Court agrees with Mr. Young and YEC that the notes contain hearsay. The Court, however, finds the notes constitute a business record. Mr. Boatfield authenticated the notes and stated he took them while investigating the claim. The Court finds the notes are part of the report and constitute a business record. For this reason, the Court denies Mr. Young's motion in limine to exclude Mr. Boatfield's hand written notes.[3]

The second part of Mr. Young's motion in limine concerned the causation letter completed by Dr. White. Mr. Young argued the causation letter is a leading questionnaire that Dr. White did not answer under oath. He urged exclusion of the letter because it meets the definition of hearsay as provided by rule 801 of the Tennessee Rules of Evidence, and does not satisfy any of the recognized exceptions found in rule 804. Additionally, Mr. Young argued the causation letter is not a medical record and, therefore, is not admissible under the Tennessee Compilation Rules and Regulations 0800-02-21-.16(b) (2015). This rule provides:

> All medical records signed by a physician or accompanied by a certification that the records are true and accurate which has been signed by the medical provider or custodian of records shall be admissible. The [Bureau] shall provide a certification form for the parties' use. There is no requirement that the certification be accompanied by an affidavit.

---

[3] The undersigned initially granted the motion to exclude the handwritten notes. Later in the hearing, YEC laid a sufficient foundation to have the notes admitted as a business record, and the Court admitted them into evidence.

YEC argued the letter is a medical record and, therefore, can be admitted pursuant to rule 0800-02-21-.16(b) because Dr. White signed the letter. The Court agrees with YEC.

An Expedited Hearing, by its very nature, is an attempt to make an initial determination on medical and temporary disability benefits as quickly as possible under the circumstances. For that reason, this Court allows parties to present affidavits rather than requiring live testimony, and allows for the simple authentication of medical records through the provider's signature. In the end, if evidence uncovered in discovery challenges the veracity of the medical records, or in this case Dr. White's causation opinion, the Court can revisit issue at the compensation hearing.

Here, Dr. White signed the causation letter and Mr. Young did not argue the signature is not valid. Dr. White's letter is the only evidence the Court has at this time concerning his causation opinion, and his opinion will assist the Court in reaching its decision. Accordingly, the Court respectfully denies Mr. Young's motion in limine to exclude Dr. White's causation letter.

## II. YEC's Motion to Exclude the Affidavit of William Harvey

In its motion in limine, YEC moved to exclude William Harvey's affidavit. YEC argued Mr. Young failed to introduce Mr. Harvey's affidavit at the time he filed his Request for Expedited Hearing. Because he did not file the affidavit when he filed his Request, YEC argued the Court's Practices and Procedures, specifically Rule 7.02A, prohibit the Court from considering the affidavit as evidence at the hearing. The Court disagrees.

As Mr. Young pointed out in his argument, this Court revised Rule 7.02A, removing the requirement that the party filing a Request for Expedited Hearing submit the affidavit simultaneously. While the current rules still require the party seeking relief through an Expedited Hearing to file an affidavit, revised Rule 7.02A does not require simultaneous filing.

Although revised Rule 7.02A does not require simultaneous filing, the Court can envision circumstances where a party filed an affidavit so close to the hearing date that its introduction would prejudice the opposing party. Here, however, the Court finds Mr. Young filed the affidavit far enough in advance of the hearing so that its inclusion would not prejudice YEC. The Court file reveals Mr. Young filed Mr. Harvey's affidavit on February 17, 2016, six days after filing the Request for Expedited Hearing and one day before YEC filed its response. This was also fifteen days before the Expedited Hearing. Under these circumstances, the Court finds Mr. Young filed Mr. Harvey's affidavit

within a reasonable period of time.[4]  Accordingly, the Court respectfully denies YEC's motion to exclude the affidavit.

## Findings of Fact and Conclusions of Law

Mr. Young bears the burden of proving all elements of his claim by a preponderance of the evidence in order to recover workers' compensation benefits.  Tenn. Code Ann § 50-6-239(c)(6) (2015); *see also Buchanan v. Carlex Glass Co*., No. 2015-01-0012, 2015 TN Wrk. Comp. App. Bd. LEXIS 39, at *5 (Tenn. Workers' Comp. App. Bd. Sept. 29, 2015).  However, he does not have to prove every element of his claim by a preponderance of the evidence in order to obtain relief at this Expedited Hearing.  *See McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27. 2015).  Instead, he must come forward with sufficient evidence from which this Court can determine he is likely to prevail at a hearing on the merits.  *See* Tenn. Code Ann. § 50-6-239(d)(1) (2015).  For the reasons provided below, the Court finds Mr. Young carried his burden of proving a likelihood of success at a trial on the merits on the issue of medical treatment and reimbursement of medical expenses, but failed to prove entitlement to temporary disability benefits.

## I.  Mr. Young suffered an injury at work.

In order for Mr. Young to be eligible for benefits at all, he must have suffered an injury as defined by the Workers' Compensation Law.  An "injury" means "an injury by accident . . . arising primarily out of and in the course and scope of employment, that causes death, disablement, or the need for medical treatment of the employee[.]"  Tenn. Code Ann. § 50-6-102(14) (2015).  To constitute a viable claim for workers' compensation benefits the injury must be "by a specific incident, or set of incidents, arising primarily out of and in the course and scope of employment."  *Id*.  "An injury arises primarily out of and in the course and scope of employment only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes[.]"  *Id*.  (Internal quotations omitted).

Mr. Young testified he suffered an injury when he lifted a shopping cart off the ground and fell backward on May 11, 2015, while working as an electrician apprentice for YEC.  YEC questioned Mr. Young's truthfulness and introduced evidence to impeach his credibility.  YEC pointed to inconsistencies between his trial and deposition

---

[4] In its argument, YEC also pointed out that Mr. Young indicated Mr. Harvey would testify at the hearing when he filed his Request for Expedited Hearing instead of providing an affidavit.  Because Mr. Young filed the affidavit fifteen days before the hearing, YEC had ample time to subpoena Mr. Harvey if it wished to examine cross-examine him concerning his statements in the affidavit.

testimony concerning an alleged injury to his neck. In his deposition, Mr. Young denied any prior neck-related problems. At trial, YEC asked Mr. Young about an incident on February 22, 2014, where an unidentified person punched him. When he went to the hospital, providers placed him in a neck collar, took a CT of his cervical spine and diagnosed him with cervical spondylolisthesis. Mr. Young stated he had forgotten about that incident and denied having any problems with his neck after leaving the emergency room.

The Court finds this testimony was not inconsistent; therefore, YEC failed to impeach Mr. Young's credibility. Although Mr. Young failed to disclose the February 22, 2014 incident, the circumstances of the incident do not show he suffered an acute injury to his neck.

YEC also questioned Mr. Young about alleged inconsistencies in his deposition and trial testimony related to prior arrests. YEC claims Mr. Young disclosed one arrest but failed to disclose a second one. The Court disagrees. In his deposition testimony, Mr. Young disclosed a felony arrest and conviction for initiation of methamphetamine and also disclosed a misdemeanor arrest for drug paraphernalia.

In addition to its impeachment attempts, YEC also cited Mr. Young's alleged nine-day delay in reporting his accident to Mr. Boatfield as evidence the accident did not occur. The Court does not find this argument compelling. At the hearing, Mr. Young maintained he told Mr. Boatfield "exactly what happened; that I had been injured at work that day" on May 12, 2015, the day following accident. When YEC asked Mr. Boatfield if Mr. Young reported the accident on May 12, his testimony was less certain than Mr. Young's. Mr. Boatfield testified he kept a daily log and would have included an injury report such as Mr. Young's in the log. However, he also admitted no one had suffered a workplace accident while he worked at YEC, so it is unclear that Mr. Boatfield knew what to do when an employee suffered a workplace injury. Because the accident did not appear in the daily log, Mr. Boatfield did not think it happened. He stated the following concerning whether accident happened: "I really don't think so, I mean I didn't note [sic] nothin' down."

The Court finds Mr. Young's testimony more persuasive than Mr. Boatfield's and finds Mr. Young reported the workplace accident to Mr. Boatfield on May 12, 2015.

Finally, YEC points to the lack of medical history describing Mr. Young's incident in his visits to Dr. White as further proof Mr. Young did not sustain an injury at work. YEC claims that if the accident occurred, Mr. Young would have told Dr. White, and Dr. White would have recorded a description of the accident in the medical history.

While the lack of a description of the accident in Dr. White's medical notes is curious, Dr. White admitted he never asked Mr. Young whether an accident caused his

9

injury. Additionally, this Court had the opportunity to observe Mr. Young testify. To the Court, Mr. Young appeared self-assured, steady, confident, forthcoming, reasonable and honest during his testimony. These characteristics, according to the Tennessee Supreme Court, are indicia of reliability. *See Kelly v. Kelly,* 445 S.W.3d 685, 694-695 (Tenn. 2014). The Court finds Mr. Young's testimony sufficient to prove he suffered an injury under the Workers' Compensation Law.

## II. YEC must provide Mr. Young medical care and reimbursement for some out-of-pocket medical expenses.

Mr. Young received treatment from unauthorized providers for several weeks after his injury. He seeks recovery of the costs associated with the treatment. The Court finds he can recover some, but not all, of those costs.

Tennessee law requires an employer to provide "free of charge to the employee such medical and surgical treatment . . . made reasonably necessary by accident as defined in this chapter[.]" *See* Tenn. Code Ann. § 50-6-204(a)(l)(A) (2014). Upon being provided notice of a workplace injury, the Workers' Compensation Law requires an employer to "designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician." *Id.* at 50-6-204(a)(3)(A)(i).

The Bureau of Workers' Compensation rule governing medical panels requires the employer to "immediately" provide the injured employee a panel, and allow for penalization of an employer who fails to provide a panel "within a reasonable amount of time, but in no instance longer than five (5) business days" after notice. Tenn. Comp. R. & Regs. 0800-02-01-.25(1) (2015). Additionally, Bureau rules governing claims-handling require that decisions of coverage and compensability "be made within fifteen (15) days of verbal or written notice of [the] accident." Tenn. Comp. R. & Regs. 0800-2-14-.04(7) (1999). If an employer fails to provide a three-physician panel as required by section 50-6-204(3)(A)(i), it risks having to pay for all reasonable and necessary medical expenses incurred by an employee through treatment with an unauthorized physician. *See Lindsey v. Strohs Cos., Inc.*, 830 S.W.2d 899, 902-3 (Tenn. 1992); *McCreary v. Yasuda Fire & Marine Ins. Co. of Amer.*, No. 01S01-9507-CH-00106, 1996 Tenn. LEXIS 102, at *5-6 (Tenn. Workers' Comp. Panel Feb. 20, 1996) (citing Tenn. Code Ann. § 50-6-204)).

Applying the above principles to this case, the court finds Mr. Young reported the accident on May 12, 2015, but did not receive a panel for more than a month. During the period between the injury and provision of a panel, Mr. Young sought treatment on his own from Drs. White, Adams, and Lanford. In the Court's opinion, YEC waited too long

to provide Mr. Young a panel.  At the very latest, YEC should have provided Mr. Young panel by May 27, 2015, and should have decided whether to accept the claim by June 9, 2015.  *See* Tenn. Comp. R. & Regs. 0800-02-01-.25(1) and 0800-2-14-.04(7).  Because YEC failed to timely provide Mr. Young a panel or make a timely decision to reject his claim, the Court finds he was justified in seeking unauthorized medical care.

While Mr. Young seeks recovery of payment made to all three providers (*See* Ex. 3.), the Court finds only Dr. Landford's bills are recoverable at this time as he is the only physician who opined Mr. White's need for treatment arose out of the workplace accident.[5]  YEC shall pay the cost of the care provided by Dr. Lanford and reimburse Mr. Young his out-of-pocket costs.

In addition to paying the bills for care provided by Dr. Lanford, YEC shall also provide Mr. Young continuing medical care.  On June 27, 2015, Mr. Young selected Dr. Singh from a panel provided by YEC but YEC never made an appointment for him. (Ex. 5.)  The Court finds Mr. Young is entitled to evaluation and treatment by Dr. Singh for his work-related injury.

### III.    Mr. Young cannot recover temporary disability benefits at this time.

In additional to medical care, Mr. Young also requests payment of temporary disability benefits from the date of the accident through February 2, 2016.  In order to establish a prima facie case for temporary total disability benefits, the worker must show (1) he or she is totally disabled and unable to work due to a compensable injury, (2) the work injury and inability to work are causally connected, and (3) the duration of the disability. *Gray v. Cullom Machine, Tool & Die, Inc.*, 152 S.W.3d 439, 443 (Tenn. 2004) *Jewell v. Cobble Construction and Arcus Restoration,* No. 2014-05-0003, 2015 TN Wrk. Comp. App. Bd. LEXIS 1, at *21 (Tenn. Workers' Comp. App. Bd. Jan. 12, 2015).  An employee may recover temporary total disability benefits until she is able to return to work or attains maximum medical improvement. *Prince v. Sentry Ins. Co.*, 908 S.W.2d 937, 939 (Tenn. 1995).

Here, the only evidence of Mr. Young being unable to work comes from Dr. Adams, who noted Mr. Young could not work and took him off work for the week of May 27, 2015. (Ex. 1 at 48.)  The medical records do not show that any other physician opined Mr. Young could not work.  Additionally, Mr. Young returned to the YEC jobsite and asked Mr. Boatfield to allow him to come back to work.  Accordingly, Mr. Young failed to carry his burden of proving he was totally disabled from work for any period other than the seven days Dr. Adams took him off work.  Mr. Young cannot, however,

---

[5] This finding does not prevent Mr. Young from introducing evidence to establish the reasonableness and necessity of care provided by the other physicians in future proceedings.

recover temporary disability benefits for this seven-day period.  *See* Tenn. Code Ann. § 50-6-205(a) (2015) ("No compensation shall be allowed for the first seven (7) days of disability resulting from the injury.").  For these reasons, the Court finds Mr. Young is unlikely to prevail at a hearing on the merits in proving entitlement to temporary disability benefits.  His request for these benefits is denied at this time.

**IT IS, THEREFORE, ORDERED** as follows:

1. YEC, or its workers' compensation carrier, shall provide medical treatment for Mr. Young's work-related injury with Dr. N.K. Singh.  Dr. Singh or Mr. Young shall provide bills for these services to Young Electric or its workers' compensation carrier.

2. Young Electric, or its insurance carrier, shall pay the cost of all treatment provided to Mr. Young by Dr. Lanford, and reimburse Mr. Young his out-of-pocket expenses associated with his care.

3. Mr. Young's request for temporary disability benefits is denied at this time.

4. This matter is set for an Initial (Scheduling) Hearing on May 2, 2016, at 9:00 a.m. (CDT).

5. Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2015).  The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order.  Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance.

6. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471.

**ENTERED this the 13ᵗʰ day of April, 2016.**

_____

**Judge Joshua Davis Baker**
**Court of Workers' Compensation Claims**

<u>Initial Hearing:</u>

An Initial (Scheduling) Hearing has been sent for **May 2, 2016, at 9:00 a.m. Central Time** with **Judge Joshua Davis Baker, Court of Workers' Compensation Claims. You must call 615-741-2113 or toll free at 855-874-0474 to participate in the Initial Hearing.**

**Please Note: <u>You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation. All conferences are set using Central Time (CT).</u>**

<u>Right to Appeal:</u>

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1. Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2. File the completed form with the Court Clerk within seven business days of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3. Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4. The appealing party is responsible for payment of a filing fee in the amount of $75.000. Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **<u>Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.</u>**

5. The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of

the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:

1. Medical Records of David Young
2. Affidavit of David Young
3. Medical Bills
4. First Report of Injury
5. C-42 Choice of Physician Form
6. Wage Statement
7. Transcript of Deposition of David Young
8. Affidavit of William Harvey
9. Affidavit of Dr. Lanford
10. Letter from Dr. Lanford dated September 3, 2015

Technical Record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Notice of Filing Deposition of David Young
5. YEC Responsive Brief
6. YEC Position Statement
7. YEC Notice of Filing Evidence and Table of Contents
8. YEC Witness and Exhibit List
9. David Young's Motion in Limine
10. YEC Response to Motion in Limine
11. YEC Motion in Limine

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing was sent to the following recipients by the following methods of service on this the 13th day of April, 2016.

| Name | Certified Mail | Via Fax | Via Email | Service sent to: |
|---|---|---|---|---|
| Michael Fisher | | | X | mfisher@ddzlaw.com |
| Stephen Morton | | | X | Stephen.morton@mgclaw.com |

_____

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**