

FILED

November 8, 2016

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time: 8:28 A.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **MAE CRUMBLE,** | ) | **Docket No.: 2016-07-0351** |
| **Employee,** | ) | |
| **v.** | ) | |
| **EXPRESS SERVICES,** | ) | **State File Number: 99792-2015** |
| **Employer,** | ) | |
| **And,** | ) | |
| **NEW HAMPSHIRE INS. CO.,** | ) | |
| **Insurance Carrier.** | ) | **Judge Allen Phillips** |
| | ) | |
| | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS AFTER REMAND

---

This matter came before the undersigned Workers' Compensation Judge upon remand from the Tennessee Workers' Compensation Appeals Board. The Appeals Board vacated this Court's August 30, 2016 order holding that Ms. Crumble was entitled to a panel of orthopedic specialists from which she might choose an authorized physician. The Appeals Board remanded the case to this Court for its determination of whether Dr. Sioson was an authorized treating physician selected from a panel, whose opinion is entitled to a presumption of correctness. If Ms. Crumble did select Dr. Sioson as a treating physician, then the Court must determine if Ms. Crumble rebutted his causation opinion by a preponderance of the evidence.

After reconsideration, this Court holds Dr. Sioson was not a treating physician selected from a panel, and further holds that his opinion does not meet the applicable legal standard for causation. Accordingly, for the reasons set forth below, the Court holds Ms. Crumble is entitled to a panel of physicians.

### Procedural History

Ms. Crumble filed a Petition for Benefit Determination (PBD) seeking medical and temporary disability benefits for a right shoulder injury on November 14, 2015. (T.R.

1 at 1).[1] When the parties did not resolve the contested issues through mediation, the mediating specialist issued a Dispute Certification Notice (DCN) and listed under "Defenses" the following: "Claim is not compensable based upon the opinion from the paneled authorized treating physician." (T.R. 2). Ms. Crumble requested an Expedited Hearing, which the Court conducted on August 30, 2016.

At the Expedited Hearing, and as relevant to this remand,[2] the Court found Ms. Crumble testified credibly regarding the nature and timing of her injury, and came forward with sufficient evidence to entitle her to a panel of orthopedic specialists to treat her right shoulder. In so finding, the Court determined the only opinion in the record, that of Dr. Sioson, was inadequate to either prove or disprove the relation of Ms. Crumble's injury to her work at Express. In the absence of a valid opinion, and because Ms. Crumble need not prove causation by a preponderance of the evidence at an Expedited Hearing, the Court found her testimony regarding her injury was sufficient to entitle her to "a complete evaluation" of her alleged injury. (Expedited Hearing Order at 10).

This Court also noted its "serious doubts as to whether Express provided Ms. Crumble with a valid panel." *Id.* It did so because it believed Ms. Crumble's testimony "that she was steered toward Work Care" by Express. *Id.* The Court further questioned the circumstances of the medical evaluation given the totality of the evidence and the "incongruous testimony" of a purported provider at Work Care.

Accordingly, following the Expedited Hearing, this Court ordered that, "Ms. Crumble shall receive medical benefits from Express Services for treatment of her right shoulder injury of November 14, 2015, by Express Services providing a panel of orthopedic specialists from which she might choose the authorized physician." *Id.* at 11.

On appeal, the Appeals Board vacated this Court's order and remanded the case "for determination of whether Dr. Sioson is the 'treating physician, selected by the employee from the employer's designated panel of physicians as contemplated in section 50-6-102(14)(E) such that his causation opinion is presumed to be correct and, if so, whether the presumption was rebutted by a preponderance of the evidence." *Crumble v. Express Employment Services*, No. 2016-07-0351, 2016 TN Wrk. Comp. App. Bd. LEXIS ___, at *6-7 (Tenn. Workers' Comp. App. Bd. Oct. 12, 2016).

---

[1] The Court will cite to the Technical Record and Exhibits as numbered in its original Expedited Hearing Order and as set forth in the Appendix attached to this Order for Medical Benefits After Remand.

[2] The issue of notice, heard by the Court at the Expedited Hearing, was not raised as an issue in the appeal. Therefore, the Court need not summarize its findings in regard to notice. However, the Court made many factual findings and credibility determinations in context of Express' notice defense and it includes those in the "Facts" section of this order to the extent they are relevant to the determination of the issues on this remand.

## Facts

Express Services, a staffing agency, assigned Ms. Crumble to work at ARJ, a manufacturing plant. On November 14, 2015, while operating a machine, Ms. Crumble claims she felt a "pop" in her right shoulder. The Court found credible Ms. Crumble's description of the injury, and its effects, both by her words and by her demeanor.

At the Expedited Hearing, the parties contested whether Ms. Crumble provided Express with proper notice of her injury. Again, the Court found Ms. Crumble more credible and adopted her version of the facts.

On December 16, 2015, Ms. Jamie Johnson, Express' representative for hiring and placing employees, advised Sonya Williams, Express' "Risk Manager," of Ms. Crumble's reporting of an injury. In the presence of Ms. Johnson, Ms. Williams completed an injury report, provided a panel of physicians, and presented Ms. Crumble a "prescription card." The panel presented to Ms. Crumble included the following providers, listed verbatim as, Physicians Quality Care, Dr. James Diffee, III, and Work Care Resources, Inc. (Ex. 2.) Ms. Crumble chose Work Care. She described the presentation of the panel as follows:

Q: And when they gave you that panel, how many doctors were on the panel?

A: Three.

Q: And did you choose one?

A: No.

Q: Tell the Court what happened there.

A: She told me . . Ms. Jamie did when they was at the table and they brung the panel out, they was like, "These are the doctors that you have to choose from, but these two doctors right here you won't be able to see today or get into. Your best bet is to take Work Care if you wants to be seen today," so I wanted to be seen, so I took Work Care.

(T. at 46).[3]

Ms. Johnson's memory of the meeting consisted of this exchange:

Q: And you gave her a panel of doctors?

---

[3] The Court will cite the Transcript of Evidence filed with the Appeals Board as "T. at __."

A: Yes.

Q: And did you tell her that if she chose Work Care, they could get her in that day and see her? She could be seen quicker at Work Care than the other two?

A: I don't know for sure.

(T. at 171).

Ms. Williams denied any attempt to influence Ms. Crumble regarding her choice of physician. (T. at 190).

Ms. Crumble presented to Work Care on December 16, 2015. When she arrived, Ms. Crumble testified that Amy Naylor, a nurse practitioner, drove her to another facility to see Dr. Conrado Sioson. Ms. Crumble related that Ms. Naylor then engaged in a conversation with Dr. Sioson before he entered the exam room. Once there, Dr. Sioson stayed fewer than five minutes and, as part of his examination, asked Ms. Crumble to raise her right arm. She admitted she told Dr. Sioson not to touch her because her shoulder hurt.

Ms. Naylor explained Work Care's "protocol" regarding workers' compensation patients. (Ex. 5.) Namely, there are two options; one, "for patients choosing Dr. Conrado Sioson as their initial treating physician; Amy Naylor or her nurse will drive the patient to . . . Dr. Sioson's . . office . . .. If any follow up appointments are necessary Amy Naylor takes over care after initial treatment plan." *Id.* This option notes "little to ZERO wait time for worker's comp" at Dr. Sioson's office "via Work Care Resources." *Id.* The second option listed on the protocol allows selection of Amy Naylor as "their initial provider." *Id.*

Ms. Naylor testified that Dr. Sioson has no office at Work Care, but Work Care pays him to see their workers' compensation patients. Though Dr. Sioson is her supervising physician, she knew neither his specialty nor his address. She confirmed his name did not appear on the panel given to Ms. Crumble.

Dr. Sioson recorded the "Injury Date" as "11/14/15." He noted Ms. Crumble said, "[t]hat hurts" and asked him to "not touch" her. Dr. Sioson reviewed x-rays from Jackson General and noted they were negative for any abnormalities. He memorialized this visit by stating:

Ms. Crumble stated that during the course of her employment at ARJ that her right shoulder began causing her pain but she continued to do her job as normal. She stated she told several supervisors . . . that use of [a]

4

machine was causing her right shoulder pain yet she never asked for medical treatment.

* * *

Due to no one specific injury or date of injury and the timing of which this injury was reported (one week after the termination of her work assignment) it is not possible for me to classify this as a work related injury.

(Ex. 4 at 34.)

Ms. Naylor testified she "usually" is the Work Care employee who drives workers' compensation patients to Dr. Sioson's office because it is she who, "will be typing his notes afterwards, [and] I know exactly what he wants and what he did and its easier to do it that way." (T. at 130). Ms. Naylor testified regarding her discussion with Dr. Sioson, and what he related to her regarding Ms. Crumble's injury, as follows:

Q: Dr. Sioson couldn't say one way or the other whether this injury was work-related or not. Is that what he told you?

A: Yes.

* * * *

A: . . my understanding was it's not possible to classify it as a work-related injury, maybe it could or could not be.

Q: So that statement right there to you means that it could or could not be.

A: Yes, sir.

(T. 139-140; 141-142).

In response to a "MEDICAL QUESTIONNAIRE" sent by Express, Dr. Sioson answered in the affirmative when asked if Ms. Crumble "identif[ied] a specific incident or series of incidents that gave rise to this alleged injury[.]" *Id.* at 43. He then stated there was "no specific injury but only doing her job." *Id.* He then stated "No" to the question, "did Ms. Crumble's alleged right shoulder injury arise primarily out of and in the course and scope of her employment." *Id.*

5

**Appeals Board Opinion**

The Appeals Board addressed two issues: first, Express' contention that this Court erred by applying an incorrect legal standard in addressing medical causation. Specifically, Express contended this Court failed to apply a presumption of correctness to Dr. Sioson's causation opinion and whether Ms. Crumble rebutted that presumption by a preponderance of the evidence. Second, the Board considered Express' contention that this Court erred in ordering a panel of orthopedic specialists because it had provided a valid panel from which Ms. Crumble had chosen a physician who had not made an orthopedic referral. *Crumble*, at*4-5.

In addressing these issues, the Board first noted that this Court primarily focused upon the standard set forth in *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015) and expounded upon in *Lewis v. Merry Maid*, No. 2015-06-0456, 2016 TN Wrk. Comp. App. Bd. LEXIS 19 (Tenn. Workers' Comp. App. Bd. Apr. 20, 2016), as to whether Ms. Crumble came forward with sufficient evidence for the Court to determine that she would prevail at a hearing on the merits. *Id.* at *5. However, both *McCord* and *Lewis*, unlike this case, dealt with situations where a panel of physicians had not been provided. Hence, this Court erred by ending its analysis with a determination only as to whether or not Ms. Crumble had come forward with sufficient evidence from which this Court might determine she would prevail at a full hearing. *Id.* at 6.

In addressing the remedy for what it deemed this Court's incomplete analysis, the Board first stated that, "[i]n their pre-hearing briefs submitted to the trial court and in their briefs on appeal, both parties addressed whether Dr. Sioson is an authorized treating physician and whether his causation opinion is entitled to a presumption of correctness."[4] *Id.* at*6. Because it determined this Court "did not address these issues" and that "it is not [their] place to do so in the first instance," the Board remanded the case for a determination of whether Dr. Sioson was a treating physician whose opinion was entitled to a presumption of correctness. *Id.*

**Findings of Fact and Conclusions of Law**

*Standard applied*

Because this case is in a posture of an Expedited Hearing, Ms. Crumble need not

---

4 The Court notes that only Express argued this issue before the Expedited Hearing in a Pre-Hearing Brief, designated as T.R. 4. Ms. Crumble did not submit a pre-expedited hearing brief before the Expedited Hearing. In its pre-hearing brief, Express asserted only that, "Employee selected Work Care Resources off the panel of physicians that was presented to her." (T.R. 4 at 2). Express then merely asserted that Dr. Sioson was an "ATP" (authorized treating physician) whose opinion is presumed correct. Accordingly, this Court was not privy to any specific arguments in "briefs" at the Expedited Hearing regarding the issue. This Court is not privy to the arguments the parties made on appeal.

prove every element of her claim by a preponderance of the evidence in order to obtain relief. *McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App. Bd. LEXIS 6, at *7-8, 9 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Instead, she must come forward with sufficient evidence from which this Court might determine she is likely to prevail at a hearing on the merits. *Id.*; Tenn. Code Ann. § 50-6-239(d)(1) (2015).

*Provision of a valid panel of physicians*

As directed by the Appeals Board, the first issue for resolution is whether Express provided Ms. Crumble a proper panel of physicians. The Court finds it did not.

The Workers' Compensation Law sets forth the respective duties of an injured employee and her employer in regards to medical treatment in Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) as follows:

> The injured employee shall accept the medical benefits afforded under this section; provided that in any case when the employee has suffered an injury and expressed a need for medical care, the employer shall designate a group of three (3) or more independent reputable physicians, surgeons, chiropractors or specialty practice groups if available in the injured employee's community or, if not so available, in accordance with subdivision (a)(3)(B), from which the injured employee shall select one (1) to be the treating physician.

In *Lindsey v. Strohs Companies*, 830 S.W.2d 899 (Tenn. 1992), the Tennessee Supreme Court explained that the above statute imposed "concomitant duties" upon the parties with respect to authorized medical treatment. Namely, an employer has a duty to furnish medical treatment and the injured employee has a corresponding duty to accept the treatment. *Id.* at 902. However, it is the employee who has the privilege of *selecting* her physician. In this case, the question of whether Ms. Crumble selected the physician is outcome determinative.

Beginning with the most glaring defect, Dr. Sioson was *not on the panel* that Express provided to Ms. Crumble. Hence, she could not have chosen him as a treating physician. Instead, Ms. Crumble chose "Work Care" and she testified her "assumption" was that she would be seen at Work Care. (T. at 57). That was a fair, and in fact the only logical assumption she might have made. The Court recognizes an employer might place a "specialty" practice group" on a panel but, in this instance, it did not. The evidence shows Work Care was not a group of "specialists." In fact, the evidence showed that only a nurse practitioner was on site and, even she was not sure of Dr. Sioson's actual specialty if he were a Work Care physician.

7

The Court finds Express did not afford Ms. Crumble the "privilege" of selecting a physician; instead, it placed her in a position of either choosing Work Care or facing what was conveyed as a delay in receiving treatment. The Court believes the true dialogue during presentation of the panel was the quoted testimony of Ms. Crumble to the effect that, "[y]our best bet is to take Work Care if you want to be seen today." The Court reaches this conclusion after having the benefit of personally observing the witnesses and hearing their live testimony. The Court notes Express, through Ms. Johnson offered only that, "I don't know for sure" when asked if she told Ms. Crumble she could only be seen "today" if she chose Work Care. The Court, in its Expedited Hearing Order, has already found Ms. Crumble's version of the facts to be the most credible on the notice issue and reiterates those determinations on the current issue.

The Court also notes this is Ms. Crumble's first workers' compensation claim. She never encountered a meeting to choose a physician before December 16, 2015. Moreover, her unrebutted testimony at the Expedited Hearing was that she was a special education student. She testified to difficulties reading "big words" and demonstrated that limitation when asked to read a medical record at the hearing. The Court believes her intellectual limitations are real and appreciates the role those limitations played when thrust into a meeting with management to choose a physician.

Beyond the meeting at Express, the Court finds, as it did at the Expedited Hearing, the "protocol" followed by Work Care indicates an employee in the position of Ms. Crumble could not foresee being transferred via vehicle from her panel selection's office to Dr. Sioson. Ms. Naylor explained that Express employees have "two options" when seeing a treating physician. One such option includes Dr. Sioson. Of course, that "option" involves "little to ZERO wait time," just as Express personnel told Ms. Crumble when presenting the panel. But, an employee has no way of knowing that Dr. Sioson is the provider to whom they are sent at the outset. Likewise, if the "protocol" is presented to employees at Work Care, then the employee could not "choose" Dr. Sioson at the outset since his name appears *only after* arrival at Work Care. The Court recognizes employers routinely utilize the name of "practice groups" on panels, as the statute allows. Further, such inclusions remove absolute certainty regarding what provider an employee may see. However, such is not the case here. Ms. Naylor transported Ms. Crumble to an entirely different clinic not contained on the provided panel. Such steering to one provider to the exclusion of others is antithetical to a knowing "selection" by the injured employee.

Based on the totality of the evidence, the Court holds Express failed to provide Ms. Crumble with a valid panel of physicians from which she had the privilege of selecting a treating physician.

*Causation*

Absent the privilege of selecting a treating physician, the Court finds Dr. Sioson was not a "treating physician," selected from a panel and, holds as a matter of law that his

8

opinion is not entitled to any presumption of correctness. After review of Dr. Sioson's opinion without any presumption of correctness, the Court determines it does not meet the applicable legal standard.

As the Court noted in its Expedited Hearing Order, Dr. Sioson stated, "[i]t is not possible for me to classify this as a work-related injury." (Ex. 4 at 34.) But, when directly asked whether Ms. Crumble "identif[ied] a specific incident or series of incidents that gave rise to this alleged injury," he replied, "Yes." *Id.* at 43. He then stated there was "no specific injury but only doing her job." *Id.* However, Dr. Sioson noted an injury date of November 14, 2015, the date asserted by Ms. Crumble throughout this case. *Id.* at 34. Further, he noted she reported use of the machine at ARJ caused her pain but that she "never asked for medical treatment." *Id.* Again, this is consistent with Ms. Crumble's testimony that she waited to seek medical treatment thinking her shoulder would improve. The Court finds Dr. Sioson's record confirms Ms. Crumble's consistent and believable testimony that she suffered a specific incident on November 14, 2015.

Ms. Naylor's testimony also is instructive on the sufficiency of Dr. Sioson's causation opinion. Ms. Naylor testified she typed the records of Dr. Sioson. (T. at 130). Further, she confirmed that Dr. Sioson stated he could not determine the cause of Ms. Crumble's injury. (T. at 141-142). The language in his note stated, "it is not possible for me to classify this as a work related injury." (Ex. 4 at 34). He explained this to Ms. Naylor that he "couldn't say one way or the other whether this injury was work-related or not." (T. at 139-140). Accordingly, the Court holds that Dr. Sioson did not render a definitive opinion. *See, McCord v. Advantage Human Resourcing*, No. 2014-06-0063, 2015 TN Wrk. Comp. App Bd. LEXIS 6, at *17 (Tenn. Workers' Comp. App. Bd. Mar. 27, 2015). Thus, "she has satisfied her burden at this interlocutory stage to support an Order compelling Employer to provide a panel of physicians."

**IT IS, THEREFORE, ORDERED** as follows:

1. Ms. Crumble shall receive from Express a valid panel of physicians or specialty groups pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(i) to evaluate and treat her right shoulder injury of November 14, 2015.

2. This matter is set for an Initial (Status) Hearing on February 22, 2017, at 9:00 a.m. Central time.

**ENTERED this the 8th day of November, 2016.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

9

<u>Initial (Status) Hearing</u>:

An Initial (Status) Hearing has been set with **Judge Allen Phillips, Court of Workers' Compensation Claims. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Initial Hearing.**

**Please Note: You must call in on the scheduled date/time to participate. Failure to call in may result in a determination of the issues without your further participation.**

<u>Right to Appeal</u>:

Tennessee Law allows any party who disagrees with this Expedited Hearing Order to appeal the decision to the Workers' Compensation Appeals Board. To file a Notice of Appeal, you must:

1.  Complete the enclosed form entitled: "Expedited Hearing Notice of Appeal."

2.  File the completed form with the Court Clerk *within seven business days* of the date the Workers' Compensation Judge entered the Expedited Hearing Order.

3.  Serve a copy of the Expedited Hearing Notice of Appeal upon the opposing party.

4.  The appealing party is responsible for payment of a **filing fee in the amount of $75.00.** Within ten calendar days after the filing of a notice of appeal, payment must be received by check, money order, or credit card payment. Payments can be made in person at any Bureau office or by United States mail, hand-delivery, or other delivery service. In the alternative, the appealing party may file an Affidavit of Indigency, on a form prescribed by the Bureau, seeking a waiver of the filing fee. The Affidavit of Indigency may be filed contemporaneously with the Notice of Appeal or must be filed within ten calendar days thereafter. The Appeals Board will consider the Affidavit of Indigency and issue an Order granting or denying the request for a waiver of the filing fee as soon thereafter as is practicable. **Failure to timely pay the filing fee or file the Affidavit of Indigency in accordance with this section shall result in dismissal of the appeal.**

5.  The parties, having the responsibility of ensuring a complete record on appeal, may request, from the Court Clerk, the audio recording of the hearing for the

10

purpose of having a transcript prepared by a licensed court reporter and filing it with the Court Clerk within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. Alternatively, the parties may file a joint statement of the evidence within ten calendar days of the filing of the Expedited Hearing Notice of Appeal. The statement of the evidence must convey a complete and accurate account of what transpired in the Court of Workers' Compensation Claims and must be approved by the workers' compensation judge before the record is submitted to the Clerk of the Appeals Board.

6. If the appellant elects to file a position statement in support of the interlocutory appeal, the appellant shall file such position statement with the Court Clerk within five business days of the expiration of the time to file a transcript or statement of the evidence, specifying the issues presented for review and including any argument in support thereof. A party opposing the appeal shall file a response, if any, with the Court Clerk within five business days of the filing of the appellant's position statement. All position statements pertaining to an appeal of an interlocutory order should include: (1) a statement summarizing the facts of the case from the evidence admitted during the expedited hearing; (2) a statement summarizing the disposition of the case as a result of the expedited hearing; (3) a statement of the issue(s) presented for review; and (4) an argument, citing appropriate statutes, case law, or other authority.

## APPENDIX

Exhibits:
1. Affidavit of Mae Crumble;
2. Choice of Physician Form (C-42);
3. Medical Records of Jackson-Madison Co. General Hospital;
4. Medical Records of Work Care Resources;
5. Workers' Compensation Protocol for Work Care Resources; and,
6. Express Services' Handbook Receipt Form electronically signed by Ms. Crumble.

Technical record:
1. Petition for Benefit Determination;
2. Dispute Certification Notice;
3. Request for Expedited Hearing; and,
4. Employer's Brief In Opposition To Employee's Petition For Medical Benefits And Temporary Total Disability Benefits.[5]

---

[5] The Court did not consider attachments to Technical Record filings unless admitted into evidence during the Expedited Hearing. The Court considered factual statements in these filings or any attachments to them as allegations unless established by the evidence.

# CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 8th day of November, 2016.

| Name | Via Email | Service sent to: |
|---|---|---|
| Edward L. Martindale, Esq. Employee's Counsel | X | emartindale@martindalelaw.net |
| Greg Fuller, Esq. Chris G. Rowe, Esq., Employer's Counsel | X | ghfuller@mijs.com cgrowe@mijs.com |

_Penny Shrum_

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**