Edmond L. LINDSEY,
Plaintiff/Appellant,

v.

STROHS COMPANIES, INC. and Aetna
Casualty and Surety Company,
Defendants/Appellees.

Supreme Court of Tennessee,
at Jackson.

March 2, 1992.

Rehearing Denied July 6, 1992.

Edmond L. Lindsey, pro se.

John R. Cannon, Jr., Memphis, for defendants/appellees.

## OPINION

ANDERSON, Justice.

In this worker's compensation action, the trial court awarded the employee 100 percent permanent and total disability, denied certain past medical expenses, and placed restrictions on future medical expenses. Part of the award was commuted to lump sum and lump-sum attorney's fees were allowed. The plaintiff appeals *pro se*, raising numerous issues, not all of which require discussion. Because we find the trial court erred in commuting both the award and attorney's fees, in the denial of certain past medical expenses, and the limitation of future medical expenses, we reverse in part and affirm in part.

## FACTUAL HISTORY

On April 23, 1986, the plaintiff, Edmond L. Lindsey ("Lindsey"), injured his back while employed with the defendant, Strohs Companies, Inc. ("Strohs"), which was insured for worker's compensation by Aetna Casualty and Surety Company ("Aetna").

Lindsey reported to the company nurse's office immediately after his injury, was given some medication, and returned to work. Ten days later, he went to his family physician, told him about his back injury, and was given some muscle relaxants. He took the muscle relaxants for three to four days, but did not receive any significant relief. Since his back was not improving, Lindsey reported to the company nurse's office to ask about medical care and fill out an accident report. When he inquired about going to see a doctor for his back, he was told that he could go as soon as the company heard from the worker's compensation carrier.

Because he was in constant pain, Lindsey went to see Dr. Dana Wyatt, a chiropractor, on May 12, 1988. When he informed the company nurse that he was seeing a chiropractor, he was told that the company would not pay for it and that a chiropractor could not get a worker excused from work. Despite being told this, he continued to see the chiropractor for approximately three weeks without improvement.

In June of 1986, Lindsey saw Dr. Paul Williams, an orthopedic surgeon, who treated him until August 14, 1986, and then referred him to Dr. D.J. Canale, a neurosurgeon. Dr. Canale examined him and told him that he would call Strohs and tell them that he could not return to work for one week. Up until that time, he had continued working every day.

After seeing Dr. Canale, Lindsey went to the company's first aid office and inquired about going to a company doctor. Once again, he was told that he could not go to a doctor until the company heard from the

worker's compensation carrier. He was not given a list of company doctors at this time and was told that he would have to go to a doctor on his own.

While he was off from work in late August by order of Dr. Canale, Lindsey received a phone call from a representative of Aetna, who told him that Dr. Canale's services, including scheduled surgery in early September, would be covered by Aetna. After this conversation, Lindsey began receiving temporary total disability benefits.

Lindsey was admitted to the hospital on September 2, 1987, and surgery for the removal of a herniated disc was performed on his back on September 5th. Dr. Canale released him to return to work, with some restrictions, in January of 1988 and assessed his disability at 10 percent to the body as a whole.

Lindsey returned to work but, in his judgment, he was unable to perform the work. When he expressed his dissatisfaction with Dr. Canale's treatment, Strohs for the first time provided him with a list of three physicians. He chose Dr. Keener Blake Ragsdale, an orthopedic surgeon. Dr. Ragsdale treated him from January of 1987 to January of 1989 and recommended that he have additional surgery at the site of the previous herniated disc to alleviate some of his pain. He advised him the prospects of success were only fair, and that only 40 percent of his back pain could be eliminated even if the surgery was successful. Dr. Ragsdale also referred him to a number of specialists, each of whom recommended surgery. Lindsey, however, declined to have additional surgery and remained unhappy with his medical care.

Without seeking prior approval from Strohs, Lindsey went to see Dr. Earl C. Mills, a neurologist in Washington, D.C., who also recommended surgery. In addition, Lindsey had an MRI performed in Mobile, Alabama. Lindsey felt that Dr. Canale had made a mistake during the initial surgery, and that none of the doctors would tell him what went wrong because they were all part of a conspiracy to protect Dr. Canale. As a result, it was difficult for him to trust physicians, and he was extremely suspicious of any recommendation for surgery, based on the poor results he felt he had obtained from the first surgery and the chances for a later successful result. Lindsey remains in constant pain and has never returned to work.

## TRIAL COURT FINDING

Based on the foregoing, the trial court awarded the plaintiff 100 percent permanent total disability benefits minus temporary total benefits previously paid, with $20,000 of the award and the attorney's fees to be paid in a lump sum. The award included payment of all past medical expenses, except the chiropractor's expenses for treatment immediately after the injury and the expenses for treatment in Washington, D.C. and Mobile, Alabama. In addition, the trial court limited payment of the plaintiff's future medical expenses as follows:

> Defendants will pay Dr. Blake Ragsdale or will provide plaintiff with a list of three qualified doctors to choose from, for all necessary visits to monitor the effects of pain medication on plaintiff; for all visits to monitor plaintiff's physical condition as it relates to his back injury in excess of twice per year visits [sic] or diagnostic tests which must be medically necessary and recommended by plaintiff's physician, Dr. Ragsdale, or the doctor selected by plaintiff from the list provided by the defendants must have prior approval of defendants or leave of this court upon motion of plaintiff. Plaintiff is hereby allowed up to $50.00 per month for prescriptions prescribed by plaintiff's physician for his back injury, unless future orders of this court are entered modifying this amount; plaintiff is hereby allowed 1 blood workup per year as directed by his physician in order to monitor the effects of the medication on plaintiff; should plaintiff elect to undergo future back surgery ..., then plaintiff may make application to defendants for payment of this surgery, and if defendants decline payment of this expense, plaintiff is hereby grant-

ed leave to motion this court for a determination of this payment by defendants.

## SCOPE OF REVIEW

Our review of findings of fact by the trial court is *de novo* upon the record of the trial court, accompanied by a presumption of the correctness of the findings, unless the preponderance of the evidence is otherwise. Tenn.Code Ann. § 50–6–225(e)(1983 & Supp.1991); *Lollar v. Wal–Mart Stores, Inc.*, 767 S.W.2d 143, 149 (Tenn.1989). However, if factual issues are not disputed, our review is simply one of law, without regard to the *de novo* standard of review. *McCormick v. Snappy Car Rentals, Inc.*, 806 S.W.2d 527, 529 (Tenn.1991).

## MAXIMUM DISABILITY BENEFITS

■ The first issue raised on this appeal is whether the trial court erred by ordering that the amount of temporary total benefits previously paid to the employee should be deducted from the statutory maximum benefit to determine the amount of permanent total disability benefits. The plaintiff contends that because an employee may recover both temporary *total* and permanent *partial* disability benefits as a result of the same injury, *see Jones v. Crenshaw*, 645 S.W.2d 238 (Tenn.1983), an employee should be able to recover both temporary *total* and permanent *total* disability benefits without deducting one from the other. We disagree.

■ "[T]he legislature has followed a consistent policy of effectively eliminating the temporary total disability benefits awarded to an injured employee adjudged to have a permanent total disability." *Smith v. Liberty Mut. Ins. Co.*, 762 S.W.2d 883, 884 (Tenn.1988). The total liability of the employer for temporary total disability and permanent total disability is limited to the maximum specified in Tenn.Code Ann. § 50–6–205(b). *Jones v. Crenshaw*, 645 S.W.2d at 242. Tenn.Code Ann. § 50–6–205(b)(1983 & Supp.1986) provides that the total amount of compensation payable by the employer shall not exceed the maximum total benefit provided in § 50–6–

102(a)(7), exclusive of medical, hospital, and funeral benefits.

Since the plaintiff was injured on April 23, 1986, and has been adjudged 100 percent disabled, the maximum total benefit to which he is entitled is $67,200.00. Tenn. Code Ann. § 50–6–102(a)(7)(A)(Supp.1986). The plaintiff had already been paid temporary total disability benefits totaling $9,936.00. If Aetna paid Lindsey both temporary total and permanent total disability benefits, he would receive benefits totaling $78,136.00, resulting in an overpayment of $9,936.00. Therefore, although the trial judge did not use the method set forth in *Bennett v. Howard Johnsons Motor Lodge*, 714 S.W.2d 273 (Tenn.1986), he reached the correct result by deducting from the statutory maximum recovery the sum of temporary total benefits previously paid to the employee to determine the correct amount of permanent total disability benefits.

## DENIAL OF MEDICAL EXPENSES

The next issue is whether the trial court correctly denied payment of certain medical expenses. The trial court found that Aetna was not responsible for chiropractic care given immediately after the injury and prior to Lindsey's being furnished with a list of three physicians by the defendant. In addition, the trial court denied payment of the expenses incurred for treatment in Washington, D.C., and Mobile, Alabama.

■ Under Tenn.Code Ann. § 50–6–204 (1983 & Supp.1986), an employer has a duty to furnish medical and surgical treatment reasonably necessary to treat a work-related injury. Under the same statute, the injured employee has a corresponding duty to accept the medical benefits provided by the employer, but only if the employer provides a list of three or more physicians or surgeons from which the employee has the privilege of selecting the operating surgeon or attending physician. Where the employer fails to give the employee the opportunity to choose the ultimate treating physician from a panel of at least three physicians, the employer runs the risk of having to pay

the reasonable cost for treatment of the employee's injuries by a physician of the employee's choice. *U.S. Fidelity & Guaranty Co. v. Morgan*, 795 S.W.2d 653, 655 (Tenn.1990).

■ Since Strohs failed to designate three approved physicians, the plaintiff was justified in seeking medical treatment elsewhere. *Simpson v. Frontier Community Credit Union*, 810 S.W.2d 147, 151 (Tenn. 1991). Strohs knew about the plaintiff's injury and knew that he was seeking medical care. Because there is no evidence that the charges for chiropractic treatment were unreasonable, we find that the trial court should have awarded the plaintiff payment of these expenses.

■ The trial court, however, correctly denied payment of the expenses for treatment in Washington, D.C., and Mobile, Alabama. There is no proof in the record establishing the necessity and reasonableness of these charges other than Lindsey's apparent belief that he had to seek medical treatment outside of Memphis because area doctors were part of a conspiracy to protect Dr. Canale. We find that the plaintiff has failed to meet his burden of establishing the necessity and reasonableness of charges incurred under physicians not designated or approved by the employer. *See Russell v. Genesco, Inc.*, 651 S.W.2d 206, 211 (Tenn.1983).

## LIMITATION OF FUTURE MEDICALS

■ The next issue is whether the trial court improperly limited the plaintiff's future medical expenses. An employee is entitled, under the provisions of Tenn.Code Ann. § 50-6-204, to recover any reasonable and necessary medical expenses in the future which may be incurred as a result of a compensable injury. *Roark v. Liberty Mut. Ins. Co.*, 793 S.W.2d 932, 935 (Tenn. 1990); *Underwood v. Liberty Mut. Ins. Co.*, 782 S.W.2d 175, 176 (Tenn.1989).

The trial court limited the plaintiff's compensable prescriptions to $50.00 per month and ordered that the plaintiff must have prior approval from the defendant or the court to obtain medical treatment. We con-

clude the court erred in limiting the plaintiff's access to medical services and prescription drugs provided by the physicians approved by Strohs and Aetna, because "the employee should not bear the burden of establishing the necessity of medical treatment or the reasonableness of medical charges when the employer has designated the physician or the employer's designate refers the claimant to other specialists." *Russell v. Genesco*, 651 S.W.2d at 211. However, the trial court correctly limited plaintiff's access to surgery, prescriptions, and services provided by any other physicians by requiring the defendants' or the court's prior approval because "[t]he plaintiff still has the burden of establishing the necessity and reasonableness of charges incurred under physicians not designated or otherwise approved by the employer." *Id.*

## LUMP SUM COMMUTATION

■ The next issue we are required to address is whether the trial court correctly commuted $20,000.00 of the award to lump sum, with the remainder to be paid weekly. Lindsey contends that the trial court should have commuted the entire award to a lump sum to enable him to pay medical expenses and move his family away from the airport. We disagree.

■ This Court has long recognized that lump-sum awards are an exception to the general purposes of our workers' compensation laws. *Valles v. Daniel Construction Co.*, 589 S.W.2d 911, 912 (Tenn. 1979); *Reece v. York*, 199 Tenn. 592, 288 S.W.2d 448, 450 (1956). The purpose of worker's compensation is to provide injured workers with periodic payments as a substitute for lost wages in a manner consistent with the worker's regular wage. *Van Hooser v. Mueller Co.*, 741 S.W.2d 329, 330 (Tenn.1987). Accordingly, we have repeatedly held that commutation should occur only in exceptional circumstances and not as a matter of course. *See, e.g., Williams v. Delvan Delta, Inc.*, 753 S.W.2d 344, 349 (Tenn.1988); *Van Hooser v. Mueller Co., supra,* 741 S.W.2d at 330. Moreover, commutation of an award of periodic

payments should not be ordered perfunctorily, without careful inquiry by the trial judge as to all the facts and circumstances. *Smith v. Gallatin Nursing Home,* 629 S.W.2d 683, 685 (Tenn.1982).

At the time of this hearing in 1989 [1], to determine whether to commute an award to lump sum, a trial court had to decide whether the commutation was in an employee's best interest. The threshold requirement for a showing of best interest was that the employee had to prove a special need. *Fowler v. Consolidated Aluminum Corp.,* 665 S.W.2d 713, 715 (Tenn. 1984); *Flowers v. South Central Bell Telephone Co.,* 672 S.W.2d 769 (Tenn.1984). Applying the special needs test, we have held in the past that the employee's burden may be met by demonstrated need for housing. *See Burris v. Cross Mountain Coal Co.,* 798 S.W.2d 746 (Tenn.1990). *Clark v. National Union Fire Ins. Co.,* 774 S.W.2d 586, 590 (Tenn.1989); *Kelley v. 3-M Co.,* 639 S.W.2d 437, 439–40 (Tenn. 1982); *Smith v. Gallatin Nursing Home, supra,* 629 S.W.2d at 685. Although the 1990 amendment does not apply here, we have since held that a demonstrated need for housing may provide a basis upon which to order commutation. *Harness v. CNA Ins. Co.,* 814 S.W.2d 733, 736 (Tenn. 1991).

Our examination of this record, however, demonstrates it will not support a lump sum award for housing. The need for housing established in the record is based on the employee's desire to move because of airport environmental conditions, restricted by his apparent dispute with a government condemnation agency over the value of his present home. There is no proof in the record concerning the specific home to be purchased, its sales price, the needed downpayment, the mortgage amount if any, or whether in fact any lump sum would be needed to purchase another house after receiving payment from the condemning authority for his present home. In our judgment, the record will only support a lump sum award for $8,000.00 borrowed for medical expenses on the basis that they contributed towards the potential rehabilitation of the worker. *See North American Royalties v. Thrasher,* 817 S.W.2d 308, 311 (Tenn.1991).

Accordingly, our examination of this case leads us to conclude that the employee's best interest is served by a reduction in the lump sum commutation from $20,000.00 to $10,000.00, to be applied to the medical expense loan and attorney's fees on that lump sum award.

## ATTORNEY'S FEES

The final issue raised is the plaintiff's argument that the attorney's fees should be reduced below the statutory amount of 20 percent. Our review of the record demonstrates that the trial court did not abuse its discretion in its approval of the amount of attorney's fees.

We must consider *sua sponte* a related attorney fee issue—whether the trial court has the authority to commute periodic payments and order the lump sum payment of attorney's fees in a worker's compensation case. We recently considered this question of first impression in *North American Royalties v. Thrasher, supra,* 817 S.W.2d at 312–13, and determined that the commutation of periodic payments to lump sum in order to permit outright payment of an attorney's fee is not authorized by statute and must be set aside. We commented that although such payments would be reasonable and fair, the statute does not authorize a lump sum award for attorney's fees, and that if such a change is to be made, the Legislature should do so by an express statutory provision.

---

**1.** Under a recent amendment to Tenn.Code Ann. § 50–6–229(a), effective July 1, 1990, the factors which Tennessee courts must consider are somewhat altered.

    In determining whether to commute an award, the trial court shall consider whether the commutation will be in the best interest of the employee and such court shall also consider the ability of the employee to wisely manage and control the commuted award irrespective of whether there exists special needs.

(Supp.1991).

Accordingly, plaintiff's attorney shall receive in lump sum 20 percent of the $10,000.00 lump sum amount, and the balance of the attorney's fees shall be paid in periodic payments.

### CONCLUSION

We affirm the trial court's judgment in part and reverse in part by allowing past chiropractic medical expenses, by allowing future medical expenses to the extent provided herein, by modifying the lump sum commutation from $20,000.00 to $10,000.00, and by reducing the award of lump sum attorney's fees to $2,000.00. This cause is remanded for further proceedings consistent with this opinion. The costs of this appeal are taxed to the defendants.

REID, C.J. and DROWOTA, O'BRIEN and DAUGHTREY, JJ., concur.