

FILED

May 25, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

Time 12:35 PM

### TENNESSEE BUREAU OF WORKERS' COMPENSATION
### IN THE COURT OF WORKERS' COMPENSATION CLAIMS
### AT JACKSON

| | | |
|---|---|---|
| **BONNIE JACKS,** | ) | **Docket No. 2016-07-0772** |
| **Employee,** | ) | |
| **v.** | ) | |
| **CAMDEN HEALTHCARE/NORTHPOINT** | ) | **State File No. 14349-2015** |
| **SENIOR SERVICES, LLC,** | ) | |
| **Employer,** | ) | |
| **And,** | ) | |
| **BERKSHIRE HATHAWAY** | ) | **Judge Allen Phillips** |
| **HOMESTATE INS. CO.,** | ) | |
| **Insurance Carrier.** | ) | |

---

## EXPEDITED HEARING ORDER FOR MEDICAL BENEFITS, DENYING ATTORNEY'S FEES AND REFERRAL TO PENALTY UNIT

---

This case came before the undersigned Workers' Compensation Judge on Bonnie Jacks' request for an Expedited Hearing for additional medical benefits. The Court conducted an in-person hearing on April 19, 2017, and a telephonic hearing on May 2, 2017. Ms. Jacks requested the Court order Northpoint to approve physician referrals to an orthopedic specialist and/or a pain management specialist and to pay certain outstanding medical bills. Ms. Jacks' counsel filed a motion for attorney's fees before the second hearing. Northpoint contested the referrals, the payment of outstanding medical bills, and the motion for attorney's fees.

The central legal issues are the appropriateness of the referrals to specialists, whether the unpaid bills are for reasonable and necessary medical treatment, and the appropriateness of an award of attorney's fees. The Court finds Ms. Jacks came forward with sufficient evidence to show a likelihood of success at a trial on the merits regarding the referral to an orthopedic specialist and the payment of the outstanding medical bills. The Court declines to award attorney's fees but does find the case appropriate for referral

1

to the Penalty Unit for consideration of a penalty for Northpoint's failure to provide timely a panel of physicians.

## History of Claim

Ms. Jacks works for Northpoint, a nursing home and rehabilitation facility, as a licensed practical nurse. On February 14, 2015, she injured her left shoulder while helping to move a patient. She reported her injury to her charge nurse, and Northpoint administered a drug screen. At that point, Debra Scott, Northpoint's workers' compensation representative, sent Ms. Jacks to Camden General Hospital. Approximately one week later, Ms. Jacks advised Northpoint that her condition was not improving. Ms. Scott then told her she might see one of two physicians, either Dr. Hollingsworth or Dr. Berry, for further treatment. Ms. Jacks opted for Dr. Berry, and Ms. Scott made her an appointment to see him. Northpoint did not offer Ms. Jacks a panel of physicians.

Ms. Jacks saw Dr. Berry on February 19. He noted her status as a "workman's comp" patient and provided several weeks of conservative treatment. When she did not improve, he recommended an MRI. When the MRI revealed a rotator cuff tear, Dr. Berry referred Ms. Jacks to Dr. Blake Chandler, an orthopedic specialist. Rather than offer Ms. Jacks a panel of orthopedic specialists, Northpoint accepted Dr. Berry's referral to Dr. Chandler.

Dr. Chandler first saw Ms. Jacks on April 22 and noted she was a "worker's compensation" patient. He performed surgery on Ms. Jacks' left shoulder on May 22 and continued to treat her for several months, ultimately returning her to regular duty. On October 14, Dr. Chandler found she had reached maximum medical improvement and assessed a permanent impairment rating.

Ms. Jacks returned to Dr. Chandler in January 2016, complaining of increased pain. He prescribed pain medication, maintained her full-duty status and ordered an arthrogram. On March 2, after noting the arthrogram showed "bursitis," Dr. Chandler maintained her full-duty status and saw her on several more occasions between January and April 2016. Dr. Chandler noted all visits were "worker's compensation" evaluations.

Ms. Jacks returned to Dr. Chandler on August 10 "in tears" because of headaches "she wakes up with every day." She also complained of neck pain. Dr. Chandler recommended an EMG/NCV that he later interpreted as normal. Afterward, on September 19, Dr. Chandler referred Ms. Jacks to "Dr. Berry for sleep and pain management." Ms. Jacks testified Dr. Chandler told her there was "no more he could do for [her]."

Ms. Jacks returned to Dr. Berry, and on September 27 he completed a form referring Ms. Jacks to Tennessee Orthopedic Alliance. Northpoint did not approve the referral. Ms. Jacks testified Dr. Berry told her there were other issues "going on" in her shoulder. On November 29, Dr. Berry noted Ms. Jacks had not seen the orthopedic specialist, and he recommended a referral to a pain management specialist.

In November 2016, Ms. Jacks' counsel corresponded with Dr. Chandler regarding causation of the shoulder injury. Dr. Chandler replied that Ms. Jacks' "symptoms" in her left shoulder were "more than 50%" related to her work injury of February 14, 2015. In March 2017, Northpoint corresponded with Dr. Chandler regarding causation of Ms. Jacks' headaches and sleep problems. Dr. Chandler replied neither were related to her work. He also stated Ms. Jacks did not need any further treatment for her shoulder.

Ms. Jacks testified she remains employed at Northpoint but that her condition prevents her from working more than twenty-four hours per week, compared to the forty-eight to fifty-two hours she worked before her injury. She works two other jobs to make up the lost overtime at Northpoint. She stated that, "all I do is work . . . and go home to rest." She testified she continues to have shoulder pain, headaches, and difficulty sleeping. She continues to suffer shoulder pain, states her shoulder "is not right," and she wants further evaluation.

Ms. Jacks' counsel argued Dr. Berry, because Northpoint offered him as a choice, became an approved physician. Thus, his referral to Dr. Chandler made Dr. Chandler an approved physician as well. Because Dr. Chandler was an approved physician, Northpoint must honor his referral "back to Dr. Berry" for "pain management treatment." Northpoint must also honor Dr. Berry's referrals to orthopedic and pain management specialists. Counsel requested "bad faith sanctions for not providing a panel" and attorney's fees "in representing [Ms. Jacks] to obtain medical benefits."

Northpoint countered that Dr. Chandler referred Ms. Jacks back to Dr. Berry "solely" for "sleep and pain management, although he [Dr. Chandler] did not indicate if this was work-related or not." This referral back to Dr. Berry occurred after Dr. Chandler had placed Ms. Jacks at MMI and "found nothing wrong." Because he is an approved physician, Dr. Chandler's opinions are presumed correct. Northpoint calls Dr. Berry's referral to Tennessee Orthopedic Alliance a "strange twist" because he made that referral in lieu of sending Ms. Jacks back to Dr. Chandler. Northpoint argued that Dr. Berry had no authority to refer Ms. Jacks, as that treatment "reverts back to Dr. Chandler upon conclusion of [Dr. Berry's] treatment of sleep issues." It also noted there was no statutory authority for an award of attorney's fees to Ms. Jacks' counsel.

At the hearing, Northpoint objected to Ms. Jacks presenting evidence regarding the pain management referral. Specifically, it contended her allegations regarding that

referral were not included in the affidavit she filed in support of her request for expedited hearing where she had requested only an orthopedic referral. Further, Northpoint's counsel was unaware why his client denied the pain management referral. Thus, counsel requested the opportunity to consult with his client.

Ms. Jacks' counsel argued Northpoint had knowledge that it denied the pain management referral and that it had not paid Dr. Berry's outstanding bills. Further, counsel stated he received the pain management referral only five days before the hearing and he filed it immediately upon receipt. Because of counsel's recent receipt of the medical record, he argued "good cause" existed for his late filing of the pain management referral.

The Court granted counsel's request for additional time to consult with his client but also allowed Ms. Jacks to put on proof in the interests of judicial economy. The Court noted the proof regarding both referrals would likely be intertwined. Nevertheless, the Court set the matter for a telephonic conference on May 2 to address the need for further proof, if any, after counsel consulted his client.

On May 2, the parties appeared telephonically, through counsel, for the scheduled conference call. They announced they were unable to agree regarding the pain management referral; Northpoint asserted the same defenses as it had to the orthopedic referral. Accordingly, the Court took the matter under advisement regarding both referrals.

### Findings of Fact and Conclusions of Law

Because this case is in a posture of an Expedited Hearing, Ms. Jacks need not prove every element of her claim by a preponderance of the evidence. Instead, she must come forward with sufficient evidence from which the Court can determine she is likely to prevail at a hearing on the merits. Tenn. Code Ann. § 50-6-239(d)(1) (2016).

### 1) Entitlement to a specialist referral

The first issue is the referral to either an orthopedic or pain management specialist. Upon the facts presented, the Court finds Ms. Jacks is entitled to a panel of physicians for an orthopedic evaluation.

Because Northpoint did not contest compensability, it had a duty to furnish to Ms. Jacks reasonable and necessary medical treatment. Tenn. Code Ann. § 50-6-204(3)(A)(i). In *Lindsey v. Strohs Co's.*, 830 S.W.2d 899 (Tenn. 1992), the Tennessee Supreme Court explained the concomitant duties of employees and employers with respect to authorized medical treatment:

4

Under [Tennessee Code Annotated section 50-6-204(a)(3)(A)(i)] the injured employee has a . . . duty to accept the medical benefits provided by the employer, *but only if the employer provides a list of three or more physicians or surgeons from which the employee has the privilege of selecting the operating surgeon or attending physician.*

*Id.* at 902-3 (Emphasis added).

In this case, contrary to its obligation under law, Northpoint did not provide Ms. Jacks a panel of physicians. It argued that, "[d]ue to the unremarkable x-rays at the emergency room, no panel of physicians was provided, as it was not clear at that time that further treatment would be needed." However, such a decision is neither Northpoint's prerogative nor the applicable standard. Instead, 50-6-204(3)(A)(i) provides that when an employee suffers an injury and "expressed need for medical care," then the employer "*shall* designate [a panel]." Ms. Jacks "expressed a need for medical care" after the emergency room visit and, at that point, Northpoint became obligated to provide her a panel. Northpoint did not provide a panel but simply offered Dr. Berry.

Likewise, when Dr. Berry made a referral to Dr. Chandler, Northpoint did not offer a panel of orthopedic specialists. It seeks absolution for its failure to provide a panel by arguing it accepted Dr. Chandler "after it was determined that an orthopedic physician was necessary." As support for this position, Northpoint cites Tennessee Compilation Rules and Regulations 0800-02-17-.25(1)(c) (2014) for the proposition that a treating physician may be "a physician recognized and authorized by the employer to treat an injured employee for a work-related injury." However, the same argument was rejected in *Lamm v. Miller Constr., Inc.,* 2016 TN Wrk. Comp. App. Bd. LEXIS 83 (Nov. 8, 2016). There, the Appeals Board noted the cited rule applied *only* to the Medical Cost Containment Program Rules and when an employer fails to offer a panel. *Id.* at *15-16. As in *Lamm*, Northpoint cannot rely upon that Rule 0800-02-17-.25(1)(c) to deem Dr. Chandler an approved physician for other purposes.

Namely, Northpoint's argument that Dr. Chandler's opinion regarding causation is presumed correct must fail. Tennessee Code Annotated section 50-6-102(14)(E) provides "the opinion of the treating physician, *selected by the employee from the employer's panel of physicians* . . . shall be presumed correct on the issue of causation." (Emphasis added). In the absence of his appearance on a panel, Dr. Chandler's opinion that Ms. Jacks needs no further treatment from the orthopedic standpoint is entitled to no presumption of correctness.

Accordingly, the Court looks to the medical evidence with no presumption of correctness. When so doing, it first notes that Dr. Berry, a physician accepted by Ms.

Jacks and paid by Northpoint, believed Ms. Jacks requires further evaluation and made a referral for both orthopedic and a pain management evaluation. Notably, he made the orthopedic referral *before* the pain management referral. Also, Ms. Jacks testified convincingly that she suffers continued issues with her shoulder. Considering these facts, the Court finds Dr. Berry's orthopedic referral more persuasive.

Northpoint contends Ms. Jacks must return to Dr. Chandler if she wants further orthopedic treatment. The Court disagrees. Dr. Chandler did not offer Ms. Jacks further treatment and, by placing her at MMI, confirmed his opinion that Ms. Jacks had reached a point where further treatment would not improve her condition. Under the facts presented, offering only a return to Dr. Chandler is inappropriate. Ms. Jacks continues to complain of shoulder issues, and Dr. Berry, a physician paid by Northpoint, deems the complaints serious enough to warrant further evaluation.

The Court must also looks to the Appeals Board directive that medical proof "must be considered in conjunction with the lay testimony of the employee as to . . . the employee's subsequent condition." *Nance v. Randstad*, 2015 TN Wrk. Comp. App. Bd. LEXIS 15, at *8 (May 27, 2015). The Court finds Ms. Jacks' testimony regarding her current condition to be credible. It believes her testimony regarding the extent of the problems she has with her shoulder. The Court also believes her testimony that Dr. Chandler told her that he had nothing further to offer from the orthopedic standpoint.

Under the facts presented, the Court finds it appropriate to order Northpoint to approve Dr. Berry's referral to Tennessee Orthopedic Alliance. It did not object to Dr. Berry's referral pursuant to Tennessee Code Annotated section 50-6-204(a)(3)(A)(ii) and provide a panel as directed by that statute. Accordingly, the Court orders Northpoint to approve Ms. Jacks to see Tennessee Orthopedic Alliance for evaluation and provision of reasonable and necessary treatment of her shoulder injury of February 14, 2015.

*2) Entitlement to further medical treatment*

Northpoint is obligated to provide Ms. Jacks reasonable and necessary medical treatment for any other conditions apart from the shoulder injury *if* made reasonably necessary by the injury of February 14, 2015. Hence, the Court finds Ms. Jacks is entitled to further treatment from Dr. Berry of any conditions apart from the orthopedic condition. Northpoint concedes he might see her for "sleep and pain issues," if such issues remain. Thus, the Court orders that Northpoint continue to pay for Ms. Jacks' treatment with Dr. Berry for conditions other than the orthopedic conditions.

### 3) Payment of outstanding bills

The Court also finds Northpoint must pay Dr. Berry's outstanding bills. Again, as it did not contest the original injury and has paid his bills to date, the Court finds no justification for it not to pay those bills that are outstanding. These represent charges for treatment Dr. Berry provided Ms. Jacks *after* Dr. Chandler had released her and total $340.00.

### 4) Attorney's fees

Ms. Jacks' counsel argued by separate motion that he is entitled to attorney's fees for pursuing Ms. Jacks' claim through mediation and the expedited hearing. Given the current procedural posture, the Court disagrees. Tennessee Code Annotated section 50-6-226(d)(1)(A) allows this Court to award attorney's fees when an employer fails to provide medical benefits pursuant to a settlement agreement, an expedited or compensation hearing order, or judgment under the Workers' Compensation Law. None of these situations is present here.

Tennessee Code Annotated section 50-6-226(d)(1)(B) allows attorney's fees when an employer fails to timely initiate medical benefits and a workers' compensation judge makes a finding at a hearing that such benefits were owed. As Northpoint correctly points out, that statute applies only to injuries *after* July 1, 2016. Tenn. Code Ann. § 50-6-226(2). As Ms. Jacks' injury occurred in 2015, counsel's request for attorney's fees for pursuing Ms. Jacks' claim at the expedited hearing stage of the case procedure is inappropriate and the Court denies his request.

### 5) Penalty referral

Tennessee Compilation Rules and Regulations 0800-02-01-.25(1) provides that:

> [u]pon notice of any workplace injury, other than a minor injury for which no person could reasonably believe requires treatment from a physician, the employer *shall immediately provide the injured employee a panel of physicians[.]* . . . In any case where the employer fails to provide a panel of physicians to the employee within a reasonable amount of time, but in no instance longer than five (5) business days from the date the employer has notice of an injury . . . the employer may be assessed a civil penalty, not to exceed five thousand dollars ($5,000).

Likewise, Tennessee Code Annotated section 50-6-118(12) provides that the Penalty Unit may collect a penalty for, "Failure of an employer to timely provide a panel of physicians that meets the statutory requirements [of the law]."

7

In this case, Northpoint agrees it never provided a panel of physicians to Ms. Jacks after she reported her injury. This failure is in contravention of the quoted rule and statute. Accordingly, the Court refers the case to the Penalty Unit for its consideration of the assessment of a penalty for Northpoint's failure to timely provide Ms. Jacks a panel of physicians.

**IT IS, THEREFORE, ORDERED** as follows:

1   Northpoint shall approve Dr. Berry's referral to Tennessee Orthopedic Alliance and pay for evaluation and/or treatment of Ms. Jacks if reasonably necessary as a result of the February 14, 2015 injury. Ms. Jacks or the providers shall provide their billing to Northpoint for payment pursuant to the applicable fee schedule.

2.  Northpoint shall pay the outstanding balances of Dr. Berry in the amount of $340.00.

3.  Ms. Jacks' counsel's request for attorney's fees is denied.

4.  The Court refers the case to the Penalty Unit for consideration of whether Northpoint should be assessed a penalty for failure to provide timely a panel of physicians once it determined to accept Ms. Jacks' injury as compensable.

5.  This matter is set for a Scheduling (Status) Hearing on **Thursday, August 10, 2017, at 10:00 a.m. Central time. You must call 731-422-5263 or toll-free at 855-543-5038 to participate in the Hearing.**

6.  Unless interlocutory appeal of the Expedited Hearing Order is filed, compliance with this Order must occur no later than seven business days from the date of entry of this Order as required by Tennessee Code Annotated section 50-6-239(d)(3) (2016). The Insurer or Self-Insured Employer must submit confirmation of compliance with this Order to the Bureau by email to WCCompliance.Program@tn.gov no later than the seventh business day after entry of this Order. Failure to submit the necessary confirmation within the period of compliance may result in a penalty assessment for non-compliance. For questions regarding compliance, please contact the Workers' Compensation Compliance Unit via email WCCompliance.Program@tn.gov or by calling (615) 253-1471 or (615) 532-1309.

**ENTERED this the 25th day of May, 2017.**

**Allen Phillips, Judge**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits:

1. Collective Medical Records:
   - Dr. Blake Chandler (pp. 1-34 and questionnaire of March 31, 2017)
   - Dr. Ken Berry
   - Dr. Ronald Bingham
   - Camden General Hospital
   - Jackson Radiology Associates
   - Henry Co. Medical Center
   - Radiology and Imaging Associates
   - Decatur Co. General Hospital
   - Baptist Memorial Hospital
   - Dr. Richard Fishbein
2. Affidavit of Bonnie Jacks, March 9, 2017
3. Supplemental Affidavit of Bonnie Jacks, April 13, 2017, with attached:
   - pain management referral,
   - additional medical bills of Dr. Berry,
   - unpaid bills of Dr. Berry, and
   - denials of prescriptions by Dr. Berry (identification only at time of hearing)
4. Employee's Responses to Employer's Request for Admissions

Technical record:

1. Petition for Benefit Determination
2. Dispute Certification Notice
3. Request for Expedited Hearing
4. Employer's Pre-Hearing Brief
5. Employee's Pre-Hearing Brief
6. Employee's Witness and Exhibit List

9

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Expedited Hearing Order was sent to the following recipients by the following methods of service on this the 25th day of May, 2017.

| Name | Via Email | Service Sent To: |
| --- | --- | --- |
| Charles L. Hicks, Esq., Attorney for Employee | X | Larry_hickslaw@bellsouth.net Shearon_hickslaw@bellsouth.net |
| Pete P. Frech , Esq., Attorney for Employer | X | ppfrech@mijs.com |
| Penalty Unit | X | WCCompliance.Program@tn.gov |

**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

10