

FILED

November 22, 2017

TN COURT OF
WORKERS'
COMPENSATION
CLAIMS

2:00 P.M.

## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **JERRY COLEMAN,** | ) | **Docket No. 2015-07-0445** |
| **Employee,** | ) | |
| **v.** | ) | |
| **ARMSTRONG HARDWOOD FLOORING,** | ) | **State File No. 97922-2015** |
| **Employer,** | ) | |
| **And** | ) | |
| **AGRI GENERAL INS. CO.,** | ) | **Judge Allen Phillips** |
| **Insurance Carrier.** | ) | |

## COMPENSATION HEARING ORDER

Mr. Coleman claimed noise exposure at Armstrong caused him to suffer hearing loss. Armstrong claimed he did not prove the alleged loss by a preponderance of the evidence. Alternatively, it disputed the severity of the loss. The Court heard these disputed issues at a Compensation Hearing on November 2, 2017, and holds Mr. Coleman established a compensable hearing loss that resulted in a permanent partial disability of 14% to the body as a whole.

### History of Claim

The Court conducted an Expedited Hearing on May 31, 2016. The Court found Mr. Coleman came forward with sufficient evidence to establish he likely would prevail at a hearing on the merits regarding the provision of medical benefits, and it ordered that Armstrong provide him a panel of physicians.[1]

Armstrong provided a panel of otolaryngologists from which Mr. Coleman chose

---

[1] The Court takes judicial notice of the evidence offered at the Expedited Hearing as set forth in its Expedited Hearing Order. *See Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 457 n.1 (Tenn. 2012) (holding a court may take judicial notice of facts established at an earlier proceeding in the same action). The Court did not address permanent disability at the Expedited Hearing and did not address the causation issue under a preponderance of the evidence standard. The parties may obtain an audio recording of the Expedited Hearing upon request of the Clerk.

1

Dr. Christopher Hall. Dr. Hall saw Mr. Coleman on August 30, 2016, and noted both Mr. Coleman's "exposure to industrial noise [for] 18 years" and his "recurrent middle ear infections on the right." Audiometric testing revealed Mr. Coleman had a "severe . . . to moderate" sensorineural hearing loss on the left and a more severe "mixed hearing loss" on the right, characterized by both a sensorineural and "conductive[2]" loss. Dr. Hall stated the sensorineural losses were more likely than not related to "workplace noise exposure" but that the conductive loss was not. He recommended an MRI to evaluate the "asymmetry" of the hearing losses and a trial of hearing aids. Based on the audiometric testing, Dr. Hall assessed a permanent impairment of 80.6% to the right ear and a 41.2% impairment to the left. These ratings combined to a binaural hearing impairment of 47.8% and equaled 17% impairment to the "whole person."

Dr. Hall saw Mr. Coleman for a second time on March 28, 2017. He noted the MRI revealed age-related changes to Mr. Coleman's brain but that it provided no explanation for the asymmetrical hearing losses. Dr. Hall again attributed the sensorineural losses to Mr. Coleman's "noise exposure [at Armstrong]" absent any other such exposure.

In June 2017, Mr. Coleman asked Dr. Hall to complete a "Standard Form Report For Industrial Injuries" (C-32). Dr. Hall noted the history of noise exposure and recurrent right ear infections. He confirmed the 17% whole person impairment rating under the relevant sections of the American Medical Association (AMA) Guidelines and stated the following as to causation: "The left ear loss is more likely than not related to noise exposure. The right ear has mixed loss. It is appropriate to attribute the same percentage of the right ear loss as the left to noise, but the additional right loss is not likely work related."

Armstrong objected to Mr. Coleman's proposed use of the C-32 and cross-examined Dr. Hall by deposition.[3] Armstrong asked Dr. Hall to review Mr. Coleman's audiometric tests performed over the years of his employment. Dr. Hall noted the tests revealed a "significant change" for the "worse" in Mr. Coleman's hearing between 2013 and 2015, the period immediately before his retirement. Dr. Hall said "most people" experience hearing loss as they age but, in Mr. Coleman's case, he "can't say what his audiogram would be [without exposure to noise]." Dr. Hall confirmed some studies had linked blood pressure and cholesterol medications, like those Mr. Coleman used, to hearing loss but did not attribute any of Mr. Coleman's hearing loss to medication-use.

Dr. Hall believed Mr. Coleman's conductive hearing loss occurred sometime

---

[2] Dr. Hall would later explain that a conductive loss differs from a sensorineural loss in that it is caused by damage to the eardrum, scarring from infection, and/or degeneration of the hearing bones of the inner ear.
[3] Tennessee Code Annotated section 50-6-235(c)(2) (2017) allows a party to object to a C-32 and schedule the physician's deposition for purposes of cross-examination. Additionally, the Court finds Mr. Coleman's use of a dated C-32 form is not germane to the outcome.

2

between 1999 and 2009 based upon Armstrong's testing. He "would call into question" whether the conductive loss was related to noise exposure, instead attributing it to either recurrent ear infections or exposure to carbon monoxide, neither of which were work-related. Nevertheless, when "keeping the conductive" component in the total rating, Mr. Coleman's overall hearing loss results in a 17% "whole person" impairment. He maintained, as he stated in the C-32, that he could apply the left ear rating of 41.2% for sensorineural loss to the right ear and, if he did so, Mr. Coleman's total impairment of both ears would equal 14% to the body.

At the hearing, Mr. Coleman's counsel argued that Dr. Hall cannot "parse or apportion" his impairment rating per the AMA Guides. Thus, this Court should consider that Armstrong "took Mr. Coleman as it found him," and look to the cumulative "functional damage" to Mr. Coleman's hearing from both noise exposure and the non-related conductive component. Thus, counsel asserted Mr. Coleman has 17% impairment to the body as a whole and is entitled to increased benefits based upon his not returning to work, his age, and his education level.

Armstrong elicited testimony from its former Human Resources Manager, who disputed the degree of noise exposure. It introduced voluminous records documenting Mr. Coleman's past treatment for ear infections, sinus issues, high blood pressure, and high cholesterol in support of its position that those issues contributed to, or caused, his hearing loss.[4] Armstrong further asserted that Dr. Hall's 17% impairment rating was completely void because he could not "delineate" between the losses attributable to noise and the losses attributable to other causes.

Armstrong proposed an impairment rating of 6.9% to the body as whole, the amount of whole body impairment attributable to Mr. Coleman's left-ear hearing loss when translating the 41.2% left ear rating to the body. It argued that Dr. Hall cannot use the left ear sensorineural impairment to rate the right ear because he cannot say what part of the left ear loss resulted from noise exposure. Accordingly, the Court should consider that only the left-ear hearing loss is work-related.

---

[4] Prior to the Compensation Hearing, Armstrong requested the Court issue a subpoena for *all* of Mr. Coleman's records from The Jackson Clinic. Anticipating production of irrelevant documents "that have nothing to do with [Mr. Coleman's] injury," the Court entered an "Order on Filing of Medical Records" on October 13 which provided that the parties "redact any such records having no bearing on the case." *See, Love v. Delta Faucet*, 2016 TN Wrk. Comp. App. Bd. LEXIS 45 (Sep. 19, 2016). Thereafter, on October 18, Armstrong filed 139 pages of records from The Jackson Clinic, which the Court reviewed page by page. Finding irrelevant records, the Court separated those having no relevance to hearing loss, such as, but not limited to, copies of correspondence, a bladder scan, x-ray reports of the elbow and knee, and multiple blood and urine test reports. Armstrong continued to contend the records should be admitted and made an "offer of proof." After taking the dispositive issues under advisement, the Court finds none of the records made a part of Armstrong's offer of proof have any relevance to a hearing loss claim and marks those records for identification only.

3

The parties stipulated that Mr. Coleman's compensation rate was $346.04 and that he voluntarily retired from Armstrong.[5]

## Findings of Fact and Conclusions of Law

### *Standard Applied*

At a Compensation Hearing, Mr. Coleman must establish all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2017).

### *1) Causation*

Mr. Coleman must first establish his hearing loss arose primarily out of and in the course and scope of his employment at Armstrong. "An injury 'arises primarily out of and in the course and scope of employment' only if it has been shown by a preponderance of the evidence that the employment contributed more than fifty percent (50%) in causing the injury, considering all causes." *Id.* at § 50-6-102(14)(B). This contribution must be established to a reasonable degree of medical certainty, which means that, in the opinion of the physician, it is more likely than not considering all causes. *Id.* at (14)(D).

Here, Dr. Hall checked "yes" in the section of the C-32 form that asked if Mr. Coleman's hearing loss had "more probably than not arose out of his employment" when "considering the nature of [his] occupation and medical history." He hand-wrote that the left-ear hearing loss was "more likely than not related to noise exposure" while the right-ear hearing loss, though "mixed," carries the same percentage of noise-related hearing loss as the left. This evidence supports a finding that Mr. Coleman suffered a noise-related hearing loss at Armstrong.

Moreover, the Court finds nothing in Armstrong's cross-examination to refute Dr. Hall's causation opinion. To the contrary, he testified Mr. Coleman reported no significant noise exposure apart from Armstrong and that the audiometric testing revealed a telltale "notch," present in both ears, consistent with a noise-induced sensorineural hearing loss. Further, serial testing at Armstrong revealed a "significant change" for the worse in Mr. Coleman's hearing between the start of his last tenure at Armstrong in 2013 and his retirement in 2015. More importantly, Dr. Hall's deposition testimony is clear

---

[5] One day prior to the Compensation Hearing, Armstrong moved to dismiss Mr. Coleman's case because he did not file a witness or exhibit list. It then cited Practices and Procedures Rule 7.03 regarding the requirement of filing a pre-hearing statement within ten days of a scheduled Compensation Hearing. Mr. Coleman countered that he filed Dr. Hall's deposition and a brief on October 19. The Court notes neither party filed a pre-hearing statement on the form provided by the Court, but it also finds the parties did timely submit all medical evidence and briefs. Any failure to use the provided form is moot. Further, the Court rejects Armstrong's argument that the Court should prevent Mr. Coleman from testifying on his own behalf because he did not "disclose" himself.

4

that he considered "all causes" of Mr. Coleman's hearing loss when he pointed to prior ear infections and a possible carbon monoxide exposure in arriving at his causation opinion regarding the right ear.

The Court rejects Armstrong's argument that *Resh v. Bldg. Materials Corp.*, No. M2009-00028-WC-R3-WC, 2010 Tenn. LEXIS 141 (Tenn. Workers' Comp. Panel March 11, 2010) supports its position. There, the medical expert "acknowledged that he was unable to distinguish what part of [employee's] hearing loss may have been caused [by non-related and work-related factors."] *Id.* at *19. Here, Dr. Hall *did* distinguish the portion of the hearing loss that was work-related, and the Court holds Mr. Coleman established by a preponderance of the evidence that he sustained a sensorineural hearing loss to both ears due to noise exposure at Armstrong.

### 2) *Extent of permanent disability*

In *Baumgardner v. United Parcel Service*, 2017 TN Wrk. Comp. App. Bd. LEXIS 63, at *10-11 (Oct. 18, 2017), the Appeals Board noted that "the method of calculating permanent partial disability as set forth in Tennessee Code Annotated section 50-6-207 is dependent on the existence of a permanent medical impairment rating" and, "absent [such] rating, there is no statutory mechanism by which a trial court can award permanent partial disability benefits." Reading this in context of the definition of injury, it is apparent that Mr. Coleman must first establish a relationship of his hearing loss to his work and then establish the degree of impairment for the loss.

Mr. Coleman argued that Dr. Hall's 17% rating to the body as a whole is correct because it considers the total "functional loss" of hearing as required by the AMA Guides. The Court agrees that Dr. Hall testified the conductive loss is "a part of" [Mr. Coleman's] binaural disability. However, Dr. Hall testified immediately thereafter that "the conductive may not be related from [sic] work." He later said he would "call into question" whether the conductive loss was related to noise. These statements doom Mr. Coleman's argument for a 17% permanent partial disability. Though he may have lost that much function, he did not prove the loss was work-related, and the Court cannot award him benefits for any portion of a disability that is not work-related.

Instead, the Court finds Dr. Hall attributed 14% impairment to the body as a whole to noise exposure. In its cross-examination, Armstrong asked Dr. Hall to use the 41.2% impairment to the left ear and extrapolate that rating to the right. Dr. Hall did so and calculated a binaural impairment of 14% under the AMA Guides. Mr. Coleman questions the propriety of such "parsing," yet his questioning of Dr. Hall yielded a response that says otherwise. Namely, Mr. Coleman directed Dr. Hall to page 249 of the AMA Guides, which reads, "[t]he estimation of the relative contributions of different causes of hearing impairment is in the apportionment process as described in Chapter 2." (Hall depo. at 30). Neither party asked Dr. Hall to use the apportionment process, but on

5

no less than four occasions, he testified the left ear sensorineural loss might be applied to the right ear. (Hall C-32 form; Hall depo. at 8, 26, and 31).

Judges and lawyers are not well-suited "to second-guess a medical expert's treatment, recommendations, and/or diagnoses absent some conflicting medical evidence or some other countervailing evidence properly admitted into the record." *Scott v. Integrity Staffing Solutions*, 2015 TN Wrk. Comp. App. Bd. LEXIS 24, at *8 (Aug. 18, 2015). In this case, Dr. Hall did not relate the conductive component of Mr. Coleman's right-ear hearing loss to noise exposure to a reasonable degree of medical certainty, and the Court cannot second guess that opinion. Thus, the Court can only award permanent partial disability for the hearing loss attributable to noise exposure and holds that disability equals 14% to the body as a whole.

A permanent partial disability of 14% results in an original award of sixty-three weeks of benefits at the rate of $346.04, or $21,800.52. The Court finds the date of maximum medical improvement is August 30, 2016, which is the date Dr. Hall first rated Mr. Coleman. Therefore, permanent disability benefits have accrued and are payable in a lump sum.

### 3) Increased benefits

Mr. Coleman argued he is entitled to increased benefits because he did not return to work, is over forty years of age, and has less than a high school education. The Court holds he is not entitled to increased benefits because he voluntarily retired from Armstrong for reasons unrelated to his hearing loss. *See*, Tenn. Code Ann. § 50-6-207(3)(D)(i) (2017).

### Future medical benefits

Mr. Coleman is entitled to lifetime future medical benefits made reasonably necessary by his hearing loss injury. Tenn. Code Ann. § 50-6-204(a)(1)(A); *Lindsey v. Strohs Cos.*, 830 S.W.2d 899, 903 (Tenn. 1992). Dr. Hall shall remain the authorized treating physician.

**IT IS, THEREFORE, ORDERED** as follows:

1. Mr. Coleman is entitled to permanent partial disability benefits equaling 14% permanent partial disability to the body as a whole. At his stipulated compensation rate of $346.04 per week, this award equals $21,800.52. Mr. Boyd, Mr. Coleman's counsel, is entitled to an attorney fee of twenty percent of the total award equaling $4,360.10 pursuant to Tennessee Code Annotated section 50-6-226(a)(1).

2. Mr. Coleman is entitled to future medical benefits as the result of his injury

6

pursuant to Tennessee Code Annotated section 50-6-204(a)(1)(A). Dr. Hall shall remain the authorized treating physician.

3. Armstrong shall pay the $150.00 filing fee under Tennessee Compilation Rules and Regulations 0800-02-21-.07 (2016) directly to the Clerk within five business days of the date of this final order, for which execution may issue if necessary.

4. Armstrong shall file a Statistical Data form within ten business days of entry of this final order.

5. Absent an appeal, this order shall become final thirty days after entry.

**ENTERED this the 22nd day of November, 2017.**

**Judge Allen Phillips**
**Court of Workers' Compensation Claims**

# APPENDIX

Exhibits:
1. C-32 form of Dr. Christopher Hall
2. Deposition of Dr. Christopher Hall
3. Medical Records of Dr. John B. Woods
4. Medical Records of Jackson Clinic
5. Medical Records of Jackson Clinic not considered by the Court (for identification only)
6. Mr. Coleman's hearing test report from Armstrong (November 4, 2014)
7. Approval Documents from prior work injury at Armstrong (entered May 15, 2015)
8. Separation Notice

Technical record:
1. Petition for Benefit Determination
2. Dispute Certification Notice (March 14, 2016)
3. Expedited Hearing Order
4. Scheduling Order
5. Employee's "Intent to Use a Written Medical Report"
6. Employer's Objection to Intention to Use Written Medical Report
7. Amended Scheduling Order
8. Second Amended Scheduling Order
9. Third Amended Scheduling Order
10. Order on Filing of Medical Records
11. "Plaintiff's Trial Brief"
12. Employer's Witness List
13. Employer's Exhibit List
14. Employer's Pre-Trial Brief
15. Dispute Certification Notice (October 27, 2017)
16. Employer's Response to Court's e-mail regarding medical records
17. Employer's Motion to Dismiss

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of this Compensation Hearing Order was sent to the following recipients by the following methods of service on this the 22nd day of November, 2017.

| Name | Via Email | Service sent to: |
|---|---|---|
| Jeffery P. Boyd, Esq., Attorney for Employee | X | jboyd@borenandboyd.com |
| William F. Kendall, Esq., Attorney for Employer | X | kendallr@waldrophall.com |

Penny Shrum, Clerk of Court
Court of Workers' Compensation Claims