**FILED**
**Sep 17, 2020**
**02:32 PM(CT)**
**TENNESSEE COURT OF**
**WORKERS' COMPENSATION**
**CLAIMS**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## IN THE COURT OF WORKERS' COMPENSATION CLAIMS
## AT JACKSON

| | | |
|---|---|---|
| **RONNIE McCAIG,** | ) | **Docket No. 2019-07-0745** |
| **Employee,** | ) | |
| **v.** | ) | |
| **LENNOX HEARTH PRODUCTS, INC.,** | ) | **State File No. 24821-2017** |
| **Employer,** | ) | |
| **And,** | ) | |
| **EMPLOYERS INS. CO. OF WAUSAU,** | ) | **Judge Allen Phillips** |
| **Carrier.** | ) | |

## COMPENSATION ORDER

This case came before the Court for a Compensation Hearing on September 2, 2020. The only issues were whether Mr. McCaig's hearing loss arose primarily out of his employment at Lennox and, if it did, whether it caused permanent disability. The Court holds that Mr. McCaig's hearing loss arose out of his employment and as a result he sustained a seven-percent permanent partial disability.

### History of Claim

Mr. McCaig attributed his hearing loss to exposure to loud machinery at Lennox from 2004 to 2014. He first noticed problems with his hearing in 2009 and said it worsened over time. After his employment ended, he obtained counsel and reported his claim to Lennox.[1]

In August 2017, Lennox authorized an evaluation with otolaryngologist Dr. Christopher Hall, who recorded Mr. McCaig's history of exposure "to industrial noise for many years." Mr. McCaig also provided a history of cardiovascular problems including a heart attack.

---

[1] Lennox initially raised notice and statute of limitations defenses but did not assert them at the hearing. Specifically, Lennox admitted that it did not provide Mr. McCaig with hearing test results during his employment to make him aware of potential work-related hearing loss.

1

Dr. Hall noted a perforation in Mr. McCaig's right ear drum, and audiometric testing showed a "mild to severe sensorineural" hearing loss in the left ear and a "mixed conductive and sensorineural" loss in the right. Dr. Hall believed the sensorineural losses were "more likely than not secondary to noise exposure," but the hearing loss would be "proportional," and any audiograms during Mr. McCaig's employment "would aid in proportioning Lennox's accountability[.]" He recommended surgical repair of the right ear drum followed by the fitting of hearing aids. However, Lennox provided no further evaluation or treatment.

In August 2019, Mr. McCaig obtained an attorney-arranged evaluation from otolaryngologist Dr. Karl Studtmann, who recorded his history of noise exposure. Like Dr. Hall, Dr. Studtmann observed the right ear drum perforation but said its location would have a "minimal effect on the hearing." Audiometric testing revealed both low- and high-frequency losses that Dr. Studtmann called "entirely sensorineural, not conductive." He explained that sensorineural losses are caused by a problem with "getting the sound through the ear canal to the hearing nerve," and that a "good portion" of Mr. McCaig's hearing loss was from noise exposure.

Dr. Studtmann said audiometric tests performed by Lennox showed a "significant" change for the worse over the years, and noise exposure was "likely the primary cause." Based on his own tests, Dr. Studtmann assigned a seven-percent permanent partial impairment due to hearing loss.

For its part, Lennox offered the testimony of otolaryngologist Dr. Ronald Kirkland, whose audiograms also showed significant hearing losses in both ears. However, he believed the losses were "primarily conductive rather than sensorineural," meaning they were "independent of noise exposure." He based that opinion on the perforated right ear drum and what he called a "floppy" left ear drum, explaining those "circumstances create a situation where the eardrum does not properly conduct the sound from the environment to the hearing bones in the inner ear." Thus, Dr. Kirkland believed Dr. Studtmann's audiograms were inaccurate because they did not consider the eardrum defects. He also said Mr. McCaig's cardiovascular problems could have played a role in his hearing loss.

When Dr. Kirkland reviewed the Lennox audiograms, he said they revealed a "significant change" for the worse in the left ear between 2004 and 2014 with some lesser changes in the right ear. Dr. Kirkland conceded, in response to a hypothetical by Mr. McCaig's counsel, that one might make an argument that the hearing losses seen in Lennox's audiograms were noise-related, and he did not "have anything to counter that [argument] with."

Based on his audiograms, Dr Kirkland assessed a thirteen-percent permanent impairment, but if he considered only testing focused on the small bones of the ear, then Mr. McCaig would have no impairment. However, he noted the *Guides* do not consider

2

bone testing a proper rating methodology.

At the hearing, Mr. McCaig said he had neither significant noise exposure nor hearing problems before working at Lennox. Currently, his hearing is poor, and he believes it is getting worse. He worked only odd jobs after leaving Lennox, and none with noise exposure. He is disabled from COPD and heart problems.

Mr. McCaig relied on Dr. Studtmann's testimony. Lennox relied on Dr. Kirkland's testimony, both as to the losses being conductive rather than noise-related, and that Mr. McCaig's cardiovascular problems could have contributed to his hearing loss.

The parties agreed Mr. McCaig's compensation rate was $519.41, and that he reached maximum medical improvement on August 1, 2017. They further stipulated that he had not returned to work, was over age forty, and lacked a high school education or its equivalent.

### Findings of Fact and Conclusions of Law

Mr. McCaig must establish all elements of his claim by a preponderance of the evidence. Tenn. Code Ann. § 50-6-239(c)(6) (2019).

*Arising out of employment*

The first issue is whether Mr. McCaig's hearing loss arose primarily out of his employment at Lennox. To establish this, Mr. McCaig must show by a preponderance of the evidence that his employment contributed more than fifty percent in causing his hearing loss when considering all causes. Tenn. Code Ann. § 50-6-102(14)(B). He must show this contribution to a reasonable degree of medical certainty, which means that, in the opinion of the physician, it is more likely than not. *Id.* at (14)(D).

Here, Dr. Studtmann said noise exposure at Lennox was "likely the primary cause" of Mr. McCaig's hearing loss; Dr. Kirkland disagreed. In deciding which medical opinion to believe, the Court may consider the qualifications of the experts, the circumstances of their examination, the information available to them, and the evaluation of the importance of that information by the other experts. *Bass v. The Home Depot U.S.A., Inc.*, 2017 TN Wrk. Comp. App. Bd. LEXIS 36, at *9 (May 26, 2017).

When applying those factors, the Court finds the physicians equally qualified. The circumstances of their examinations and the similar information available to them also keep them on equal footing. However, the importance attached to the information makes Dr. Studtmann's opinion more persuasive.

Specifically, Dr. Studtmann explained the mechanics of sensorineural hearing

3

losses and said Mr. McCaig's losses were primarily related to his noise exposure at Lennox. This mirrors the statement Dr. Hall made two years earlier. Likewise, Dr. Studtmann reviewed the audiograms performed at Lennox and said they showed a significant worsening of Mr. McCaig's hearing during his employment. Notably, Dr. Hall said review of audiograms from Lennox would aid in determining Lennox's "accountability" for the hearing loss.

Turning to Dr. Kirkland, the Court notes his concise description of conductive hearing loss and his explanation of the objective findings supporting it. However, Dr. Kirkland agreed the audiograms performed at Lennox revealed a significant change in the left ear between 2004 and 2014 and some lesser changes in the right, and he admitted to having nothing to rebut Mr. McCaig's argument that those losses were noise related. When the Court couples the latter statement with Dr. Studtmann's opinion, which is supported by Dr. Hall's statements, the Court finds Dr. Studtmann more accurate.

Finally, a work relation is bolstered by Mr. McCaig's own credible testimony. Tennessee law has long held that the employee's own assessment of his physical condition and resulting disability is competent testimony not to be disregarded. *Orrick v. Bestway Trucking, Inc.*, 184 S.W.3d 211, 217 (Tenn. 2006). By its direct observation via videoconference, the Court finds Mr. McCaig was honest, forthcoming, and succinct when describing his hearing loss and its cause. Likewise, his subjective assessment of his current hearing was believable and untainted by exaggeration. *See Kelly v. Kelly*, 445 S.W.3d 685, 694-695 (Tenn. 2014) (discussing indicia of witness credibility).

For these reasons, the Court holds that Mr. McCaig established by a preponderance of the evidence that his hearing loss arose primarily out of his employment at Lennox.

*Permanent Disability*

Having found a compensable injury, the Court turns to the extent of Mr. McCaig's permanent disability. In *Baumgardner v. United Parcel Serv.,* 2017 TN Wrk. Comp. App. Bd. LEXIS 63, at *10-11 (Oct. 18, 2017), the Appeals Board held that a permanent medical impairment rating is the "statutory mechanism" for calculation of permanent partial disability.

The Court finds Dr. Studtmann's seven-percent rating the most accurate for the same reasons it adopted his causation opinion and uses it to calculate Mr. McCaig's permanent disability. First, under Tennessee Code Annotated section 50-6-207(3)(A), Mr. McCaig is entitled to an original award of seven-percent permanent partial disability to the body, a period of thirty-one and one-half weeks of benefits. At the stipulated rate of $519.41, Mr. McCaig's original award is $16,361.42. (450 weeks x 7% x $519.41). Second, the parties agreed Mr. McCaig meets the criteria for increased benefits under section 50-6-207(3)(B). Here, the increased benefits are calculated using the following

4

factors: 1.35 times the original award because Mr. McCaig did not return to work; 1.2 times the original award because he is over age forty; and 1.45 times the original award because he lacks a high school diploma or its equivalent. Application of those factors to the original award entitles Mr. McCaig to total increased benefits of $22,071.54.

In sum, the combined original award and increased benefits equal $38,432.96. The total award of permanent partial disability is accrued and payable in a lump sum based on the stipulated date of maximum medical improvement, August 1, 2017.

*Future Medical Expenses*

Mr. McCaig is entitled to lifetime future medical benefits made reasonably necessary by his injury. Tenn. Code Ann. § 50-6-204(a)(1)(A); *Lindsey v. Strohs Cos.*, 830 S.W.2d 899, 903 (Tenn. 1992). Lennox shall designate the authorized treating physician.

**IT IS, THEREFORE, ORDERED** as follows:

1.    Lennox shall pay Mr. McCaig permanent partial disability benefits equal to a seven-percent permanent partial disability to the body, a period of 31.5 weeks, which at the stipulated weekly compensation rate of $519.41 equals $16,361.42, and increased benefits of $22,071.54, for a total award of permanent partial disability benefits of $38,432.96. The award shall be paid in a lump sum.

2.    Mr. McCaig's attorney is entitled to a twenty-percent fee of the award under Tennessee Code Annotated section 50-6-226(a)(1) in the amount of $7,686.59. Mr. McCaig may move the Court for an award of discretionary costs, unless the parties reach an agreement on the issue.

3.    Lennox shall pay future medical benefits under Tennessee Code Annotated section 50-6-204(a)(1)(A) and will designate the authorized treating physician.

4.    The Court taxes the $150.00 filing fee to Lennox, to be paid to the Court Clerk under Tennessee Compilation Rules and Regulations 0800-02-21-.06 (August, 2019) within five business days of this order becoming final, and for which execution might issue if necessary.

5.    Lennox shall prepare and submit to the Court Clerk a Statistical Data Form (SD2) within ten business days of this order becoming final.

6.    Unless appealed, this order shall become final thirty days after issuance.

5

**ENTERED September 17, 2020.**

_____Allen Phillips_____
**JUDGE ALLEN PHILLIPS**
**Court of Workers' Compensation Claims**

## APPENDIX

Exhibits
1. Medical Records of Dr. Christopher Hall
2. Deposition of Dr. Karl Studtmann
3. Deposition of Dr. Ronald Kirkland

Technical record
1. Petition for Benefit Determination
2. Dispute Certification Notice with attachments (April 22, 2020)
3. Scheduling Order
4. Post-Discovery Dispute Certification Notice
5. Employee's Witness List
6. Employee's Notice of Filing Medical Records
7. Employee's Pre-Compensation Hearing Statement
8. Employer's Pre-Compensation Hearing Statement
9. Employer's Witness List
10. Motion for Video Compensation Hearing
11. Order for Video Compensation Hearing

## CERTIFICATE OF SERVICE

I certify that a copy of this Compensation Order was sent as indicated on September 17, 2020.

| Name | Email | Service sent to: |
|---|---|---|
| Jeffrey P. Boyd, Employee's Counsel | X | jboyd@borenandboyd.com scallison@borenandboyd.com |
| Shaterra Reed Marion, Employer's Counsel | X | shaterra.marion@libertymutual.com |

_____Penny Shrum_____
**Penny Shrum, Clerk of Court**
**Court of Workers' Compensation Claims**
**WC.CourtClerk@tn.gov**

6



<u>Compensation Hearing Order Right to Appeal</u>:

If you disagree with this Compensation Hearing Order, you may appeal to the Workers' Compensation Appeals Board or the Tennessee Supreme Court. To appeal to the Workers' Compensation Appeals Board, you must:

1. Complete the enclosed form entitled: "Notice of Appeal," and file the form with the Clerk of the Court of Workers' Compensation Claims *within thirty calendar days* of the date the compensation hearing order was filed. When filing the Notice of Appeal, you must serve a copy upon the opposing party (or attorney, if represented).

2. You must pay, via check, money order, or credit card, a **$75.00 filing fee** *within ten calendar days* after filing of the Notice of Appeal. Payments can be made in-person at any Bureau office or by U.S. mail, hand-delivery, or other delivery service. In the alternative, you may file an Affidavit of Indigency (form available on the Bureau's website or any Bureau office) seeking a waiver of the filing fee. You must file the fully-completed Affidavit of Indigency *within ten calendar days* of filing the Notice of Appeal. **Failure to timely pay the filing fee or file the Affidavit of Indigency will result in dismissal of your appeal.**

3. You bear the responsibility of ensuring a complete record on appeal. You may request from the court clerk the audio recording of the hearing for a $25.00 fee. A licensed court reporter must prepare a transcript and file it with the court clerk *within fifteen calendar days* of the filing the Notice of Appeal. Alternatively, you may file a statement of the evidence prepared jointly by both parties *within fifteen calendar days* of the filing of the Notice of Appeal. The statement of the evidence must convey a complete and accurate account of the hearing. The Workers' Compensation Judge must approve the statement of the evidence before the record is submitted to the Appeals Board. If the Appeals Board is called upon to review testimony or other proof concerning factual matters, the absence of a transcript or statement of the evidence can be a significant obstacle to meaningful appellate review.

4. After the Workers' Compensation Judge approves the record and the court clerk transmits it to the Appeals Board, a docketing notice will be sent to the parties. The appealing party has *fifteen calendar days* after the date of that notice to submit a brief to the Appeals Board. *See the Practices and Procedures of the Workers' Compensation Appeals Board.*

**To appeal your case directly to the Tennessee Supreme Court, the Compensation Hearing Order must be final and you must comply with the Tennessee Rules of Appellate Procedure. If neither party timely files an appeal with the Appeals Board, the trial court's Order will become final by operation of law thirty calendar days after entry.** *See* **Tenn. Code Ann. § 50-6-239(c)(7).**

*For self-represented litigants: Help from an Ombudsman is available at 800-332-2667.*



# NOTICE OF APPEAL
Tennessee Bureau of Workers' Compensation
www.tn.gov/workforce/injuries-at-work/
wc.courtclerk@tn.gov | 1-800-332-2667

**Docket No.:** _____

**State File No.:** _____

**Date of Injury: _____**

_____

**Employee**

v.

_____

**Employer**

Notice is given that _____

*[List name(s) of all appealing party(ies).  Use separate sheet if necessary.]*

appeals the following order(s) of the Tennessee Court of Workers' Compensation Claims to the Workers' Compensation Appeals Board (check one or more applicable boxes and include the date file-stamped on the first page of the order(s) being appealed):

☐ Expedited Hearing Order filed on _____       ☐ Motion Order filed on _____

☐ Compensation Order filed on_____       ☐ Other Order filed on_____

issued by Judge _____.

## Statement of the Issues on Appeal

Provide a short and plain statement of the issues on appeal or basis for relief on appeal:

_____

_____

_____

_____

## Parties

**Appellant(s)** (Requesting Party): _____ ☐Employer ☐Employee

Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellant \**

Employee Name: _____ Docket No.: _____ Date of Inj.: _____

**Appellee(s)** (Opposing Party): _____ ☐Employer ☐Employee

Appellee's Address: _____ Phone: _____

Email: _____

Attorney's Name: _____ BPR#: _____

Attorney's Email: _____ Phone: _____

Attorney's Address: _____

*\* Attach an additional sheet for each additional Appellee \**

### CERTIFICATE OF SERVICE

I, _____, certify that I have forwarded a true and exact copy of this Notice of Appeal by First Class mail, postage prepaid, or in any manner as described in Tennessee Compilation Rules & Regulations, Chapter 0800-02-21, to all parties and/or their attorneys in this case on this the _____ day of _____, 20 _____.

_____

*[Signature of appellant or attorney for appellant]*



**Tennessee Bureau of Workers' Compensation**
**220 French Landing Drive, I-B**
**Nashville, TN 37243-1002**
**800-332-2667**

### AFFIDAVIT OF INDIGENCY

I, _____, having been duly sworn according to law, make oath that because of my poverty, I am unable to bear the costs of this appeal and request that the filing fee to appeal be waived. The following facts support my poverty.

1. Full Name:_____     2. Address: _____

3. Telephone Number: _____     4. Date of Birth: _____

5. Names and Ages of All Dependents:

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

_____ Relationship: _____

6. I am employed by: _____

My employer's address is: _____

My employer's phone number is: _____

7. My present monthly household income, after federal income and social security taxes are deducted, is:

$ _____

8. I receive or expect to receive money from the following sources:

| | | | |
|---|---|---|---|
| AFDC | $ _____ per month | beginning _____ |
| SSI | $ _____ per month | beginning _____ |
| Retirement | $ _____ per month | beginning _____ |
| Disability | $ _____ per month | beginning _____ |
| Unemployment | $ _____ per month | beginning _____ |
| Worker's Comp. | $ _____ per month | beginning _____ |
| Other | $ _____ per month | beginning _____ |

9. My expenses are:

Rent/House Payment $ _____ per month    Medical/Dental  $ _____ per month

Groceries         $ _____ per month    Telephone      $ _____ per month

Electricity       $ _____ per month    School Supplies $ _____ per month

Water             $ _____ per month    Clothing       $ _____ per month

Gas               $ _____ per month    Child Care     $ _____ per month

Transportation    $ _____ per month    Child Support  $ _____ per month

Car               $_____ per month

Other             $ _____ per month (describe: _____ )

10. Assets:

Automobile              $ _____    (FMV) _____

Checking/Savings Acct. $ _____

House                   $ _____    (FMV) _____

Other                   $ _____    Describe:_____

11. My debts are:

Amount Owed                    To Whom

_____            _____

_____            _____

_____            _____

_____            _____

**I hereby declare under the penalty of perjury that the foregoing answers are true, correct, and complete and that I am financially unable to pay the costs of this appeal.**

_____
APPELLANT

Sworn and subscribed before me, a notary public, this

_____ day of _____, 20_____.

_____
NOTARY PUBLIC

My Commission Expires:_____

LB-1108 (REV 11/15)                                          RDA 11082